[Crim. No. 26034. Second Dist., Div. Three. May 29, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD BARRON TEALER, Defendant and Appellant.

## Counsel

Anthony J. Serra, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Lawrence P. Scherb II, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**DELL, J.**\*—Defendant and his companion, Donald Wayne Henry, were convicted by a jury of a single count of attempted robbery. (Pen. Code, §§ 211, 664.) Having been sentenced to state prison for the term prescribed by law (Pen. Code, §§ 213, 664) as augmented by a finding of use of a firearm (Pen. Code, § 12022.5), defendant appeals.[1]

 Although defendant has failed to appreciate the full significance of his strongest contention on appeal—and the only one with any substantial degree of merit—he has at least recognized the tip of a *Griffin*[2] iceberg. Regrettably (since we think the investigating officer's characterization of the crime as "cold turkey" was fully justified) we are compelled to reverse because the effect of improper argument by the prosecutor and erroneous instructions by the trial court was a deprivation

---

\*Assigned by the Chairman of the Judicial Council.

[1]Henry is not a party to this appeal.

[2]*Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].

of defendant's privilege against self-incrimination under both the United States and California Constitutions.

█ Following the bungled attempted robbery of a men's clothing store in Compton—Henry having been shot and disabled by the owner—defendant departed rapidly on foot, hitched a ride for a mile and a half with a school security officer after complaining that "three Crips had tried to rob him and he was running from them," and was arrested by deputy sheriffs. Defendant was advised of his rights to counsel and silence and, upon waiving them, told a Compton police officer, "We were just passing by the place ánd decided to rob it."[3] The prosecutor proposed to "Arandize"[4] the statement to delete Henry's participation, leaving only "*I* was just passing by the place and decided to rob it." Defendant's trial counsel objected on the basis of *Aranda* and *Massie* (see fn. 4) but the objection was overruled, the trial judge saying, "The Court does not find that the offer of the district attorney to sanitize the admission or confession, whatever it may be, is one which does not do exactly what it's purported to do under Aranda, and should go under Aranda, namely, not implicate the co-defendant. It does not in any way affect the co-defendant, and no parts of that confession as edited would favor the confessing defendant, which are the three rules, as I see them, that I have to watch out for in granting or denying the Aranda motion."[5]

In due course defendant's altered statement was presented to the jury. Defendant testified briefly in his own defense, limiting his testimony to a denial of the making of the statement. We set forth his entire testimony in the margin.[6]

---

[3] Defendant testified, out of the presence of the jury, that although he was told of his rights he was not asked whether he would give them up; his request to see a lawyer was not granted; he did not make the statement in question but the officer said he would put it in his report anyway. The trial judge accepted the officer's version and we are bound by that finding on appeal. (*People* v. *Culver,* 10 Cal.3d 542, 548 [111 Cal.Rptr. 183, 516 P.2d 887].)

[4] See *People* v. *Aranda,* 63 Cal.2d 518, 530-531 [47 Cal.Rptr. 353, 407 P.2d 265], cited with approval in *Bruton* v. *United States,* 391 U.S. 123, 130-131 [20 L.Ed.2d 476, 482, 88 S.Ct. 1620]; *People* v. *Massie,* 66 Cal.2d 899, 918-919 [59 Cal.Rptr. 733, 428 P.2d 869].

[5] We suspect that if the transcript accurately reflects his comments, the temporary judge, an experienced court commissioner and former public defender, simply misspoke himself. We would expect him to have been aware of the fact that *Aranda* is not concerned with "*favor[ing]* the confessing defendant" but with the opposite, "*prejudice* to the declarant." (*People* v. *Aranda, supra,* 63 Cal.2d at p. 530, italics added; see *People* v. *Massie, supra,* 66 Cal.2d at p. 918.)

[6] "BY MR. MARKS: Q. Mr. Tealer, do you recall the night that you were arrested having a discussion with Officer Barclay? A. Yes. Q. Do you remember where you were when Officer Barclay came and got you? A. I was in the lockup in the back of the Compton Jail. Q. Did he come and get you from the lockup? A. Yes. Q. Did he take you

 Although we have not been furnished a transcript of closing arguments, the following excerpt of a proceeding in chambers sheds light on the nature of the prosecutor's tactics:

"THE COURT:These proceedings are taking place in chambers. Present are Mr. Marks on behalf of the defendant Tealer, and Mr. de la Sota on behalf of the People, the reporter, and the Court.

"MR. MARKS: Yesterday I made a motion to have the Court declare a mistrial because *Mr. de la Sota, in my judgment, made Griffin error in his argument by commenting on the fact that my client had not explained away certain things when he took the stand,* and the Court denied the motion on the basis of Griffin.

"What I failed to tell the Court is another ground for that objection, and it was an oversight on my part, for which I apologize, but I believe that the Court should have granted my motion, because what Mr. de la Sota said was untrue in another particular, and that is that *the substance of his argument was that Mr. Tealer took the stand and didn't deny the facts of the case when he had an opportunity to do so.*

"In truth and in fact, Mr. de la Sota had the opportunity to ask him about the facts of the case, as well as I did, and he failed to do so, and I think that he .decided not to ask him about the facts of the case intentionally because it would be my judgment that he would be afraid of what answers or responses he would get, and at least that's a reasonable inference to draw from his failure to ask my client about the. facts of the case, and therefore I feel that his comment to the jury about that is unfair, and a mistrial should be granted on those grounds, in addition to the grounds I stated yesterday.

"THE COURT: Any comment?

"MR. DE LA SOTA: *No, I have no comment, Your Honor.*

somewhere? A. Yes, he did. Q. Where did he take you to? A. To an interview room. Q. When he took you to that interview room, did he read you your constitutional rights? A. Yes. Q. Did he ask you about the Kings Men attempted robbery? A. Yes. Q. Did you ever make any statement, confess or admit any part in that robbery? A. No. MR. MARKS: I have nothing further. Your witness, Counsel. THE COURT: Mr. Hanson? MR. HANSON: I have no questions. THE COURT: Mr. de la Sota. BY MR. DE LA SOTA: Q. Is it your testimony now that you said absolutely nothing to Mr. Barclay about the Kings for Men? A. Yes."

"THE COURT: All right. The Court's ruling will stand. I do not intend to declare a mistrial on that ground, either, and the record is made."[7] (Italics added.)

The prosecutor requested that the jury be instructed in accordance with CALJIC No. 2.62,[8] which includes the following language: "In this case defendant has elected to and has testified as to certain facts. If you find that he failed to explain or deny any evidence or facts against him which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable."

It appears from the clerk's transcript that the trial judge initially refused the instruction but later changed his mind and gave it, interlineating the names of both defendants and causing the third sentence to read: "In this case defendant Tealer and defendant Henry have elected to and have testified as to certain facts."[9]

■ Earlier we mentioned the trial judge's seemingly minor modification of defendant's statement. The effect of that modification was to throw the entire onus of the planned robbery on defendant by converting the sometimes ambiguous and partially exculpatory "we" into an

---

[7] We assume that the prosecutor's expression "I have no comment" meant that there was no dispute that he had, as alleged by defendant's attorney, argued that defendant "had not explained away certain things when he took the stand" and "didn't deny the facts of the case when he had an opportunity to do so."

[8] The full instruction reads as follows: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. In this case defendant has elected to and has testified as to certain facts. If you find that he failed to explain or deny any evidence or facts against him which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence. The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

[9] The "history" portion of the instruction recites "Objected to by Defendant Tealer" and "Given on Court's Motion."

unmistakable "I." We think the ruling caused "prejudice to the declarant" within the meaning of *Aranda* and was error by the trial judge.[10] Standing alone, the error might not have been prejudicial (*People* v. *Watson,* 46 Cal.2d 818, 829-832 [299 P.2d 243]), but when defendant found it necessary to deny making that—or any other—statement to the investigating officer, the prosecutor utilized the opportunity to argue that defendant "had not explained away certain things" and "didn't deny the facts of the case."

This was clear *Griffin* error. A defendant who elects to testify does not give up his Fifth Amendment rights nor his corresponding California privilege against self-incrimination (Cal. Const., art. I, § 15) *except as to matters within the scope of relevant cross-examination* (*People* v. *Thornton,* 11 Cal.3d 738, 760-761 [114 Cal.Rptr. 465, 523 P.2d 267]; *People* v. *Ing,* 65 Cal.2d 603, 611 [55 Cal.Rptr. 902, 422 P.2d 590]; *People* v. *Bagwell,* 38 Cal.App.3d 127, 140 [113 Cal.Rptr. 122]).

"Even when a defendant chooses to offer testimony on his own behalf, the privilege against self-incrimination serves 'to prevent the prosecution from questioning the defendant upon the case generally, and in effect making him its own witness.' (*People* v. *Gallagher* (1893) 100 Cal. 466, 475 [35 P. 80]; *People* v. *O'Brien* (1885) 66 Cal. 602 [6 P. 695]; *People* v. *Sims, supra,* 165 Cal.App.2d 108, 113.) Such general compelled cross-examination would not only post the same 'cruel trilemma of self-accusation, perjury or contempt' recognized in *Murphy* v. *Waterfront Com., supra,* 378 U.S. 52, 55 [12 L.Ed.2d 678, 681, 84 S.Ct. 1594]; it would also penalize and thereby deter a defendant's assertion of his right to take the witness stand to explain or contradict a particular aspect of the case against him. [Fn. omitted.]

"None of these fundamental principles, however, imply that when a defendant voluntarily testifies in his own defense the People may not fully amplify his testimony by inquiring into the facts and circumstances surrounding his assertions, or by introducing evidence through cross-examination which explains or refutes his statements or the inferences which may necessarily be drawn from them. The provision of former Penal Code section 1323 'does not mean that the cross-examination must be confined to a mere categorial review of the matters, dates or times

---

[10] In the context of *Aranda* we do not think the term "prejudice" is necessarily synonymous with "prejudicial error" (which compels reversal) but rather has the customary dictionary meaning of "disadvantage" or "resulting injury or detriment." (See Random House Dict., Unabridged (1966).)

mentioned in the direct examination. . . . It may be directed to the eliciting of any matter which may tend to overcome or qualify the effect of the testimony given by him on direct examination.' (*People* v. *Pike* (1962) 58 Cal.2d 70, 90 [22 Cal.Rptr. 664, 372 P.2d 656]; *People* v. *Zerillo* (1950) 36 Cal.2d 222, 228 [223 P.2d 223].) [Fn. omitted.]" (*People* v. *Schader,* 71 Cal.2d 761, 770-771 [80 Cal.Rptr. 1, 457 P.2d 841].)

The key words in the second paragraph quoted from *Schader* are *"inferences which may necessarily be drawn."* This is illustrated in cases which hold that a defendant who takes the stand to make a general denial of a charged offense may necessarily imply that he lacked criminal intent (*People* v. *Schader, supra,* 71 Cal.2d at p. 771; *People* v. *Zerillo, supra,* 36 Cal.2d at p. 229) or that his association with a codefendant was innocent (*People* v. *Pike, supra,* 58 Cal.2d at p. 91) or that he did not commit similar offenses, whether charged or uncharged (*People* v. *Thornton, supra,* 11 Cal.3d at pp. 755-760; *People* v. *Ing, supra,* 65 Cal.2d at p. 611; *People* v. *Perez,* 65 Cal.2d 615, 619-622 [55 Cal.Rptr. 909, 422 P.2d 597]) and thus render himself subject to cross-examination on the subject impliedly denied.

A common factor in all of the cases we have discussed is an express denial by the testifying defendant of the commission of at least one of the charged crimes. However, in *People* v. *Robinson,* 61 Cal.2d 373 [38 Cal.Rptr. 890, 392 P.2d 970], one of four defendants, Hickman, admitted making an extrajudicial confession, but limited his testimony to denial of its *voluntariness*—not its *truth.* The trial court initially permitted cross-examination as to the truth of the confession, as to which our Supreme Court observed, "Undoubtedly that ruling was predicated on the theory that the truth or falsity of the statement is a fact from which the jury might infer that it was voluntary. For such purpose it was a proper subject of cross-examination." (P. 392.) But later the trial court permitted the prosecutor to cross-examine Hickman as to the facts of the crime "without regard to whether they were contained in the extrajudicial confession," so as to make Hickman a witness against his codefendants. The Supreme Court held this procedure to be error, saying, "The direct went only to the voluntary or involuntary character of the extrajudicial confession. The truth of that confession having been established, no further cross-examination was necessary or proper." (P. 393.)

Our facts, of course, are distinguishable from those of *Robinson.* Defendant, unlike Hickman, did not allege that his statement was procured by coercion but to the contrary denied making any statement at

all. *Robinson* holds that a *judicial admission of making a confession* combined with an *attack on its voluntariness* places its *truth* in issue. *It does not hold that a denial of making a confession (or admission) similarly places its truth in issue.* Such a holding would be wholly inconsistent with *Schader*; it would permit "general compelled cross-examination" and "penalize and thereby deter a defendant's assertion of his right to take the witness stand to . . . contradict a particular aspect of the case against him," in this case the making of an alleged admission.

 We are satisfied that defendant's limited testimony was no more of an implied denial of the commission of the crime charged than his previous entry of a plea of not guilty. Accordingly since he did not place in issue the *truth* of the alleged admission, the privilege against self-incrimination continued to serve " 'to prevent the prosecution from questioning the defendant upon the case generally, and in effect making him its own witness.' " (*People* v. *Schader, supra,* 71 Cal.2d at p. 770, quoting from *People* v. *Gallagher,* 100 Cal. 466, 475 [35 P. 80].)[11]

We need not decide whether the prosecutor's argument, coupled with the *Aranda* error, would have constituted prejudicial error, since the trial court itself then committed *Griffin* error by telling the jury it could "take . . . into consideration" defendant's "[failure] to explain or deny any evidence or facts against him which he can reasonably be expected to deny or explain because of facts within his knowledge . . . as tending to indicate the truth of such evidence . . ." *without* "specifically . . . [stating] the matters within the scope of proper cross-examination which the defendant failed to explain or deny."[12]

But as we have suggested, in view of defendant's flat denial of making the statement, *there were no matters* "within the scope of proper cross-examination" apart from the circumstances under which the disputed statement was or was not made. Inasmuch as there was no memorialization by tape recording of what transpired between defendant and Officer Barclay, and no signature or other writing by defendant,

[11]Assuming, contrary to the views previously expressed, that defendant's denial of making the admission was equivalent to Hickman's denial of voluntariness in *Robinson,* the scope of cross-examination still could not have extended beyond the truth of "I was [or we were] just passing by the place and decided to rob it." (*People* v. *Robinson, supra,* 61 Cal.2d at p. 393.) The prosecutor's argument and trial court's instructions were nevertheless erroneous even under that analysis, since they suggested substantially greater limits of cross-examination than *Robinson* permits and invited the jury to draw adverse inferences from defendant's failure to deny or explain matters as to which the prosecutor had made no inquiry.

[12]See use note to CALJIC No. 2.62.

there was no occasion to "explain" such phenomena as his voice, handwriting or fingerprints.

In context the only sense the instruction could have made to the jury was that the trial judge was telling them that defendant had foregone his opportunity to deny that he had been in the clothing store at all, or in the alternative to explain what his purpose was in being there and in possessing a firearm and leaving so precipitously. Although the jury was told that defendant's failure "to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt," it was also told (we think inconsistently) that such failure to explain or deny could be taken into consideration "as tending to indicate the truth of such evidence [against defendant] and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable." The net effect of the improper argument and instructions was to tell the jury it could infer guilt from silence, a procedure which since *Griffin* has been impermissible.

Despite the substantial evidence of defendant's guilt, we recognize a reasonable possibility that the procedures we have criticized "might have contributed to the conviction." (*Fahy* v. *Connecticut,* 375 U.S. 85, 86-87 [11 L.Ed.2d 171, 172-174, 84 S.Ct. 229].) Accordingly we cannot declare a belief that the error was harmless beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

Defendant's other contentions need not be discussed.

The judgment is reversed.

Ford, P. J., concurred.

**POTTER, J.,**—I concur in the result on the basis of footnote 11.

Respondent's petition for a hearing by the Supreme Court was denied July 23, 1975.