[Crim. No. 32426. Second Dist., Div. Four. Dec. 21, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL LLOYD CAMPBELL, Defendant and Appellant.

COUNSEL

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Daniel J. Kremer, Assistant Attorney General, Alan S. Meth and Henry R. Mann, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ALARCON, J.—Appellant has appealed from a judgment of conviction for violations of section 288a, subdivision (c) of the Penal Code (four counts), section 288a, subdivision (d) of the Penal Code (four counts) and section 288a, subdivision (e) of the Penal Code (four counts). Appellant was also charged with having previously committed three felonies. Each prior felony allegation was admitted by appellant prior to trial.

### Factual Background

The evidence presented in a light most favorable to the prosecution is as follows: Nineteen-year-old R. P. was confined in the Ventura County jail on October 3, 1977, at 4 a.m. on a burglary charge. He was placed in the dayroom of tank 3 as the cells were locked at that time. He met a man, Wayne or John Robinson, after he was awakened for breakfast. At approximately 6:30 a.m. Robinson asked R. P. to masturbate him. R. P. refused and told him he was "not like that." Robinson then assaulted

R. P. and forced him to commit acts of oral copulation and masturbation. Everyone else in the cell was asleep at the time of these events. R. P. did not call out for help because Robinson told him that if he did he would be dead.

Later that day R. P. met appellant and told him "about Robinson." Appellant told R. P. he would make sure nothing like that happened again.

On October 4, 1977, R. P. went to court. He told no one of these acts because he had been threatened that he would get "his butt kicked" if he did.

On the second or third night he was in custody, he called his father and told him about the forced acts of oral copulation and masturbation. R. P. told his father he could not tell the authorities because he would be assaulted even if he moved to another tank.

On October 7, around 6:30 in the evening, Robinson told appellant that if he wanted R. P. to do it, he would make R. P. do it. Robinson told R. P. he would get his butt kicked if he did not orally copulate appellant. R. P. was forced to masturbate and orally copulate appellant while Robinson sat on a nearby bunk as a lookout. Robinson and appellant then changed places and R. P. performed the same acts with Robinson. Thereafter, R. P. performed acts of oral copulation and masturbation on both Robinson and appellant every day until October 21. On two or three occasions Robinson committed an act of sodomy upon R. P. R. P. did not want to do any of these acts. He did them because he was afraid of Robinson and appellant. Robinson used force on him several times and threatened to kill him if he told anyone what had occurred with him and appellant. Appellant would threaten to get Robinson if he refused. On one occasion appellant choked him.

Some time after the initial act Robinson and appellant asked R. P. to move into cell 3 with them. R. P. did so because he was told if he did not do so they were going to move him. There were other inmates in cell 3. Some of them were present on October 20, including a person named Robbs and someone named Jim, when he was forced to commit perverted acts.

Anthony Prince testified that he never saw appellant commit any sex act with R. P., but did observe Robinson sodomize him. Prince was also

asked to "stand point" on two or three occasions by Robinson or appellant when one or both of them were in cell 3 with R. P.

Appellant told Prince that if he did not keep his mouth shut he would put out the word that somebody should get him. Appellant also told Prince to testify that he never saw appellant or John do anything.

Appellant testified in his defense and denied committing any of the acts charged against him.

Several inmates, including Albert Robbs, who were in tank 3, cell 3 in October 1977 with R. P., Robinson, and appellant, testified that they never saw any sex acts occur. Other witnesses testified they had observed R. P. engage in sodomy and oral copulation prior to October 1977. Doctor Francis Dawson testified that he examined R. P. on October 21, 1977. He found no indication of trauma in the area around the anus. Dr. Dawson was not able to determine whether R. P. did or did not engage in an act of sodomy as the passive partner. Dr. Dawson testified that one would expect to find signs of forceful entry if an act of sodomy occurred. No such signs were found on R. P.

*Issues on Appeal*

Appellant seeks reversal on the following grounds:

(1) The evidence was insufficient as a matter of law in that the testimony of R. P. was inherently improbable.

(2) There was no substantial evidence that appellant compelled R. P. to engage in oral copulation by force, violence, menace or threats of great bodily injury.

(3) It was error to give CALJIC instruction No. 2.62.

(4) It was error to give CALJIC instruction No. 2.71.

(5) It was error to admit evidence of each of appellant's prior convictions when proof of one was sufficient to attack his credibility.

*Discussion*

I

■ The evidence presented through the testimony of R. P. was not inherently improbable. Without question, there were conflicts in his testimony, and a number of witnesses contradicted him. However, we are bound by the determination of the jury as to credibility. The fact is R. P. was believed by the jury. Appellant and his witnesses were not. The acts described by R. P. were physically possible. Even if the jury believed, after having considered testimony of the witnesses presented by the defense, that many portions of R. P.'s testimony were deliberate false-hoods, it was free to conclude that those portions of his testimony concerning appellant were true. (See *People* v. *Thornton* (1974) 11 Cal.3d 738, 754-755 [114 Cal.Rptr. 467, 523 P.2d 267].)

II

■ Appellant contends that there was no substantial evidence that he compelled the participation of R. P. in an act of oral copulation by force, violence, duress, menace, or threat of great bodily harm. The evidence shows that on October 7, R. P. was threatened with great bodily injury by Robinson in the presence of appellant if he did not commit acts of sexual perversion. On other occasions appellant threatened to get Robinson if R. P. refused to perform sex acts. The evidence also shows that appellant choked R. P.. This evidence was sufficient to establish that appellant personally used force against R. P. and that he used Robinson as an instrumentality of duress and menace, as well as the agent he would use to commit great bodily injury, if R. P. did not participate in acts of oral copulation. Finally, the evidence was sufficient to show that appellant aided and abetted Robinson in menacing R. P. and in threatening great bodily injury in order to compel participation in acts of oral copulation.

III

■ Appellant contends that it was error for the trial court to give CALJIC instruction No. 2.62. We agree. CALJIC instruction No. 2.62 provides as follows: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should testify is left to the defendant, acting with the advice and assistance of his attorney. In this case defendant has elected to and has testified as to certain facts. If you find that he failed to explain or

deny any evidence or facts against him which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence. The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

The Attorney General has failed to point to any evidence presented by the prosecution which appellant failed to explain or deny. In fact, the Attorney General concedes that appellant made "general and specific denials" concerning the evidence presented by the prosecution. Appellant denied that he had ever had any sexual relations with R. P., nor did he see anyone else do so. He also denied choking R. P. Appellant testified that he did not threaten Prince but instead told him to tell the truth and not stand on the Fifth Amendment. CALJIC No. 2.62 should not be given unless the trial court first determines that the defendant has failed to explain or deny any incriminating testimony. ■ However, the erroneous giving of this instruction is not, in itself, prejudicial unless the effect of the court's admonition is to tell the jury that they may infer guilt from silence as to the charges filed against the defendant. (*People* v. *Tealer* (1975) 48 Cal.App.3d 598, 604-607 [122 Cal.Rptr. 144].) In the matter before us, appellant was not silent as to the charges against him. Each crime charged against him was categorically denied. The jury was told that the instruction was applicable only if they found that the defendant failed to explain or deny any evidence or facts against him. The jury was also instructed to "disregard any instruction which applies to a state of facts which you determine does not exist." (CALJIC No. 17.31.) The jury is presumed to have followed the court's instruction. (*People* v. *Seiterle* (1963) 59 Cal.2d 703, 711 [31 Cal.Rptr. 67, 381 P.2d 947].) It should also be noted that the prosecutor did not make any comment which implied that the defendant had failed to explain or deny any evidence presented by the prosecution. We fail to see how the jury could have been misled into believing that appellant had failed to explain or deny evidence introduced by the prosecution in view of the fact that

appellant's denial of any criminal conduct was corroborated by the other inmates present in the same cell with R. P. Under these circumstances the trial court's error in giving CALJIC No. 2.62 was harmless. (*People* v. *Richardson* (1978) 83 Cal.App.3d 853, 865 [148 Cal.Rptr. 120].)

## IV

■ Appellant contends that it was error for the court to give CALJIC instruction No. 2.71.[1] In his opening brief appellant's counsel states: "It is apparent that the court gave CALJIC 2.71 because appellant acknowledged that he told Tony Prince to tell the truth when he testified and to take the Fifth Amendment whenever he did not understand something or if the district attorney confused him. It is submitted that this evidence clearly does not qualify as an admission. The aforementioned statement has nothing whatsoever to do with appellant's guilt. It must be considered a statement with a neutral meaning." In the quoted language above counsel refers to appellant's testimony on cross-examination. By selecting this portion of the evidence counsel for appellant has picked a vulnerable strawman and vanquished him with unassailable logic. However, the record also reflects that appellant had a conversation with Prince after trial had commenced in which appellant told him that if he did not keep his mouth shut he was going "to put a kite out" on him. In jail parlance "to put a kite out" means to ask others to get someone. Appellant also stated that Prince should testify that he never saw appellant or Robinson do anything and that R. P. "was full of bull."

During the testimony of R. P., evidence was introduced of statements made by appellant during the commission of the various crimes charged against him. The trial court was required to give CALJIC No. 2.71 under these circumstances because of the dangers which are inherent whenever a witness is permitted to testify as to the oral statements of an accused. (See *People* v. *Ramirez* (1974) 40 Cal.App.3d 347, 352-353 [114 Cal.Rptr. 916].)

---

[1]CALJIC No. 2.71 provides as follows: "A statement made by a defendant other than at his trial may be an admission. [¶] An admission is a statement by a defendant, which by itself is not sufficient to warrant an inference of guilt, but which tends to prove guilt when considered with the rest of the evidence. [¶] You are the exclusive judges as to whether an admission was made by the defendant and if the statement is true in whole or in part. If you should find that such statement is entirely untrue, you must reject it. If you find it is true in part, you may consider that part which you find to be true. [¶] Evidence of an oral admission of the defendant ought to be viewed with caution."

V

Appellant concludes that the trial court committed prejudicial error in admitting evidence of three prior felony convictions. Trial counsel attempted unsuccessfully to suppress evidence of two prior convictions and to limit the prosecutor to proof of a prior burglary conviction. We know of no authority which would restrict the impeachment of a defendant as suggested by appellant. Each of the prior felonies come with the limitations imposed by *People* v. *Beagle* (1972) 6 Cal.3d 441, 452 [99 Cal.Rptr. 313, 492 P.2d 1]. Each prior conviction had a strong probative value for impeachment purposes and each was highly relevant on the issue of honesty and truthfulness. The order of the court denying appellant's motion was error free.

Appellant's request that the court take judicial notice of the reporter's transcript of the proceedings concerning the disposition of the criminal proceedings involving Wayne Robinson is denied.

The judgment is affirmed.

Kingsley, Acting P. J., concurred.

**JEFFERSON (Bernard), J.**—I dissent.

I

*The Prejudice to Defendant From CALJIC*
*Instruction No. 2.62.*

The majority concedes that it was error for the trial court to give CALJIC instruction No. 2.62 but holds that it was harmless error. I disagree. The majority makes the quantum leap that the jury followed CALJIC instruction No. 17.31 and, therefore, disregarded CALJIC instruction No. 2.62 since there was no evidence offered by the prosecution to establish that defendant "failed to explain or deny any evidence or facts against him which he can reasonably be expected to deny or explain because of facts within his knowledge." (CALJIC No. 2.62 (3d ed. 1970).)

But in telling the jury that it could "take that failure (a failure to deny or explain evidence or facts against him) into consideration as tending to

indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable" (CALJIC No. 2.62 (3d ed. 1970)), the court is indicating that there was evidence introduced which, if believed by the jury, should have been explained or denied by defendant. I am unable to see how CALJIC instruction No. 17.31 overcomes the advice to the jury from the giving of CALJIC instruction No. 2.62 that the evidence was such that if the jury decided to believe it, CALJIC instruction No. 2.62 was applicable. I do not interpret CALJIC instruction No. 17.31—to "disregard any instruction which applies to a state of facts which you determine does not exist"—as giving a jury any reasonable guidance to disregard an instruction in the situation where there is *no evidence at all* in the record to justify application of the instruction.

The majority relies upon the principle that the jury is presumed to have followed all of the court's instructions, citing *People* v. *Seiterle* (1963) 59 Cal.2d 703, 711 [31 Cal.Rptr. 67, 381 P.2d 947]. But all that *Seiterle* teaches us is that, under the circumstances presented there, the court could not agree with the *Seiterle* defendant "that there was any *substantial likelihood* that the jury was misled into understanding that defendant would be eligible for parole at the end of seven years." (*Id.,* at p. 711.) (Italics added.) In the case before us, I think there was "substantial likelihood" that the jury was misled by receiving CALJIC instruction No. 2.62.

The majority relies upon *People* v. *Richardson* (1978) 83 Cal.App.3d 853 [148 Cal.Rptr. 120], and *People* v. *Tealer* (1975) 48 Cal.App.3d 598 [122 Cal.Rptr. 144], as authority for the view that the error in giving CALJIC instruction No. 2.62 was not prejudicial. But the *Richardson* court did not find error in giving the instruction because there was evidence from which the jury could have found that the instruction was applicable. "[I]t was for the jury to determine whether appellant did in fact deny or explain all of the evidence against him and thus whether the earlier portion of the challenged instruction [CALJIC No. 2.62] was applicable" (*Richardson, supra,* 83 Cal.App.3d 853, 865).

I consider that *Tealer* is authority for the view that the giving of CALJIC instruction No. 2.62 when there is no evidence to justify it constitutes prejudicial error. The *Tealer* court stated that the net effect of erroneously giving CALJIC instruction No. 2.62 is "to tell the jury it could infer guilt from silence, a procedure which since *Griffin* [*Griffin* v.

*California* (1965) 380 U.S. 609 (14 L.Ed.2d 106, 85 S.Ct. 1229)] has been impermissible" (*Tealer, supra,* 48 Cal.App.3d 598, 607). In the case at bench, with no evidence being introduced which defendant failed to explain or deny, it is more probable than not that the jury construed defendant's failure to explain or deny some prosecution evidence—but evidence not made clear to the jury—as amounting to a consciousness of guilt from which the inference could be drawn that defendant had acted in conformity with this state of mind and had committed the offenses charged against him.

II

*The Error in Giving CALJIC Instruction
No. 2.71.*

The majority rejects defendant's contention that it was error for the trial court to give CALJIC instruction No. 2.71 which is as follows: "A statement made by a defendant other than at his trial may be an admission. [¶] An admission is a statement by a defendant, which by itself is not sufficient to warrant an inference of guilt, but which tends to prove guilt when considered with the rest of the evidence. [¶] You are the exclusive judges as to whether an admission was made by the defendant and if the statement is true in whole or in part. If you should find that such statement is entirely untrue, you must reject it. If you find it is true in part, you may consider that part which you find to be true. [¶] Evidence of an oral admission of the defendant ought to be viewed with caution."

CALJIC instruction No. 2.71 is an erroneous instruction. It does not properly define an "admission" made by a party, and is ambiguous and confusing. To expect a jury to understand from this instruction just what constitutes a defendant's "admission" is to expect the impossible. CALJIC instruction No. 2.71 makes it appear that *every* statement made by a defendant constitutes an "admission" if the statement "tends to prove guilt when considered with the rest of the evidence." How is a jury expected to know when a particular statement of a defendant "tends to prove guilt"? The instruction does not give the jury any adequate guidance and should not be given unless and until it has been revised to remove its ambiguity.

An "admission" is a hearsay statement of a party that is introduced against such party to prove the truth of the facts asserted in the statement. The innate concept of an "admission" is that it is a *hearsay* statement

which avoids the hearsay exclusionary rule because it falls within the exception to the hearsay rule for a party's statement—offered against the party to prove "the truth of the matter stated." (Evid. Code, § 1200, subd. (a).) "Not every statement made by a party qualifies for admissibility against the party under the hearsay exception for a party's admission. The statement must be offered to prove the truth of the matter stated, either expressly or impliedly. If evidence of a party's statement is *not* offered against the party to prove the truth of the statement, its admissibility must be based on the circumstantial-evidence-reasoning process. In such a case, the test of relevancy must be satisfied. But even if a party's statement qualifies as an admission because it is offered to prove the truth of the matter stated, the test of relevancy for such use must be satisfied as in the case of any proffered evidence, hearsay or nonhearsay." (Jefferson, Cal. Evidence Benchbook (1978 supp.) Admissions and Confessions, § 3.3, p. 63) (italics added); see *People* v. *Allen* (1976) 65 Cal.App.3d 426 [135 Cal.Rptr. 276]; cf. *People* v. *Sirhan* (1972) 7 Cal.3d 710 [102 Cal.Rptr. 385, 497 P.2d 1121].)

In the case before us, the majority holds that CALJIC instruction No. 2.71 was properly given because of the evidence that defendant had said to the prosecution witness Prince that if Prince didn't keep his mouth shut, he was going "to put a hit on him," meaning that he would ask others to do damage to Prince, and that defendant had told Prince that he, Prince, should testify that he never saw defendant do any of the acts charged and that R. P. (the alleged victim) "was full of bull."

But none of the statements of defendant to witness Prince was offered to prove the truth of any matter stated in such statement. And yet the jury was told by CALJIC instruction No. 2.71 that the jury could find that these statements were "admissions" by the defendant. I fail to see how a jury could rationally understand what it was to do with these statements of defendant. The jurors hearing the language of CALJIC instruction No. 2.71 could only shake their heads in utter confusion as to what reasoning process they were to engage in in trying to rationally consider this evidence.

The trial court also gave an instruction which properly related to this evidence of defendant's out-of-court statements to Prince, the prosecution witness—CALJIC instruction No. 2.04. This instruction provided: "Evidence that a defendant attempted to persuade a witness to testify falsely or tried to manufacture evidence to be produced at the trial, may be considered by you as a circumstance tending to show a consciousness of

guilt. However, such evidence is not sufficient in itself to prove guilt and its weight and significance, if any, are matters for your determination."

By hearing CALJIC instruction No. 2.04—the appropriate instruction —and CALJIC instruction No. 2.71, with its confusion in using the word "admission" without a proper definition, the jury could well have been misled into believing that defendant had made a statement acknowledging the commission of some element or elements of the offenses charged (an admission), but not acknowledging full guilt (a confession).

In the case at bench, there was no evidence introduced of any statement made by defendant which was offered to prove the *truth* of the facts stated in the statement, as being *relevant* to *prove* some portion of the prosecution's case, or as being relevant to *rebut* some portion of defendant's defense. This is how a defendant's statement—offered as an admission under the party's admission exception to the hearsay rule (Evid. Code, § 1220) becomes relevant in a criminal action (see Jefferson, Cal. Evidence Benchbook (1978 supp.) Admission of a Party—Personally Made, § 3.3, pp. 63-68).

It was prejudicial error, therefore, for the trial court to give the ambiguous, confusing and incomprehensible instruction designated CALJIC instruction No. 2.71.

### III

*It Was an Abuse of Discretion for the*
*Trial Court to Permit Defendant's*
*Impeachment as a Witness by Evidence of*
*His Conviction of Three Felonies—*
*Two Robberies and a Burglary.*

I find considerable merit in defendant's contention that the trial court abused its discretion under Evidence Code section 352 in permitting the prosecution to introduce, for witness-impeachment purposes, evidence that defendant had suffered the felony convictions of a robbery in 1972, another robbery in 1973, and a burglary in 1976. Defendant made a *Beagle* (*People* v. *Beagle* (1972) 6 Cal.3d 441 [99 Cal.Rptr. 313, 492 P.2d 1]) motion requesting that the trial court limit the prosecution's introduction of felony-conviction evidence to impeach defendant as a witness to evidence of the 1976 burglary conviction, and preclude evidence of the 1972 and 1973 robberies. This motion was denied, with the result that the

prosecutor was able to use all three felony convictions to attack defendant's credibility as a witness.

I disagree with the majority's view that *each* of the three felonies had *strong* probative value for witness-impeachment purposes and that the trial court was therefore not required to engage in the weighing process of balancing probative value against the danger of undue prejudice.

It is my view that the principles set forth in *People* v. *Beagle, supra,* 6 Cal.3d 441; *People* v. *Antick* (1975) 15 Cal.3d 79 [123 Cal.Rptr. 475, 539 P.2d 43] and *People* v. *Rist* (1976) 16 Cal.3d 211 [127 Cal.Rptr. 457, 545 P.2d 833], call for a finding by us that the trial judge abused his discretion in *not* excluding evidence of defendant's 1972 and 1973 robbery convictions, especially in view of the availability of the 1976 burglary conviction to attack defendant's credibility by this means of impeachment (Evid. Code, § 788).

I start this phase of my discussion with the principle that Evidence Code section 352 and the *Beagle* case "require[s] that the trial court, *and the appellate court* when a challenge is made to the trial court's exercise of discretion, consider *all* those pertinent factors bearing on the question whether the probative value of evidence of a prior conviction as it bears on credibility is outweighed by the risk of undue prejudice under the unique facts of the particular case" (*People* v. *Rist, supra,* 16 Cal.3d 211, 221). (First italics added; second italics in original.)

The danger of prejudice to a defendant from evidence of his prior conviction of a felony is so apparent that it requires no discussion. "A jury which is made aware of a similar prior conviction will inevitably feel pressure to conclude that if an accused committed the prior crime he likely committed the crime charged. The exclusion of a *similar* prior conviction is *especially* warranted when the defendant has also suffered a prior conviction or convictions for conduct *dissimilar* to that for which he is on trial, as the dissimilar prior crimes are available as grounds of impeachment and exclusion of the similar one is the wiser path." (*Rist, supra,* 16 Cal.3d 211, 219) (first two italics added; third italics in original).)

What are the balancing factors which a trial judge must weigh in exercising discretion under Evidence Code section 352 and *Beagle*? There are *three* factors which appear to predominate in this weighing or balancing process in order for a determination to be made whether

evidence of the defendant's prior felony convictions should be admitted or excluded for the purpose of attacking his credibility as a witness: (1) the bearing of the conviction on the credibility traits of dishonesty and lack of truthfulness; (2) the "temporal propinquity or remoteness" of the felony convictions sought to be used; and (3) the degree of similarity between the conduct upon which the prior felony conviction rested and the conduct for which the defendant-witness is on trial. (See, *Rist, supra,* 16 Cal.3d 211, 218-219.) This is not to say, however, that other factors are unimportant, such as the desirability in a particular case that the jury hear defendant's version of his participation or lack thereof in the crime charged, the strength or weakness of the prosecution's case against defendant, and the number of felony convictions suffered by the defendant.

Turning to the case at bench, it appears that, in eight of the twelve counts charging defendant with various sexual offenses, it was alleged that the sexual offenses were committed "by force, violence, menace and threats of great bodily harm" or "by force or violence and against the will of" the victim. The force, violence, duress, menace or threat of great bodily harm—charged in these eight counts of the information—are *essential* elements of the sex offenses defined in Penal Code sections 288a, subdivisions (c) and (d).

I now consider the three dominant factors involved in the weighing process as applied to the case before us. The robbery convictions in 1972 and 1973 are certainly not remote since the charged offenses involve the year 1977. But how relevant is the conduct involved in a robbery to the character traits of dishonesty and untruthfulness? The answer to this question deals with the factor of assessing the strength or weakness of the felony conviction for witness-impeachment purposes. I disagree with the majority's view that a robbery offense has "strong probative value" on the credibility traits of dishonesty and untruthfulness.

Involved in robbery is the essential element of assaultive conduct—conduct which consists of the use of force, violence, or a threat of force or violence. Robbery is thus "a crime which is both larcenous and assaultive, and thus bears *in part* on the perpetrator's integrity and veracity." (*Rist, supra,* 16 Cal.3d 211, 220.) (Italics in original.) Thus, because of the assaultive-conduct element of robbery, the offense cannot logically be considered as having strong probative value to establish the character trait of dishonesty or untruthfulness.

I turn next to a consideration of the factor of the degree of *similarity* between the prior robbery felonies of which defendant was convicted and the sex offenses for which defendant was on trial. At first blush, it might appear that a robbery and a sex offense are dissimilar. But here the sex offenses charged against defendant and the prior robbery offenses have the *similar* required element of assaultive conduct—the use of force, violence, or a threat of force or violence in the commission of each offense.

This degree of similarity between the prior felony conviction of robbery and the sex-by-force offenses charged in the information leads inexorably and inevitably to the conclusion that the danger of prejudice to the defendant far outweighs the probative value of the robbery convictions for impeachment of the defendant as a witness. The jury in the case at bench was very likely to conclude from this evidence that defendant was a violent man, with a propensity to commit crimes of violence and, therefore, because of this propensity, committed the sex-by-force crimes charged against him.

The case at bench is not unlike the factual situations and choices presented in *Rist.* In *Rist,* the defendant there had suffered a prior forgery conviction, a crime dissimilar to the robbery charged, which was available for use as impeachment evidence instead of the similar prior robbery convictions. In the case before us, there is a closer-in-time *dissimilar* burglary conviction available for use as impeachment evidence instead of the two prior robberies which are similar to the charged sex offenses by virtue of the assaultive elements of the sex-by-force offenses charged in the information.

The reasoning of *Rist* is especially applicable and persuasive in the case before us. "The exclusion of a similar prior conviction is *especially warranted* when the defendant has also suffered a prior conviction or convictions for conduct *dissimilar* to that for which he is on trial, as the dissimilar prior crimes are available as grounds of impeachment and exclusion of the similar one is the wiser path" (*Rist, supra,* 16 Cal.3d 211, 219) (first italics added; second italics in original).)

I reiterate that *Rist* points out that *Beagle* mandates that the *appellate court,* when considering whether the trial court has properly exercised its discretion, must "consider *all* those pertinent factors bearing on the question whether the probative value of evidence of a prior conviction as it bears on credibility is outweighed by the risk of undue prejudice under

the unique facts of the particular case." (*Rist, supra,* 16 Cal.3d 211, 221) (italics in original).)

As I have explained above, a consideration of the factors involved in applying Evidence Code section 352 and the principles originally enunciated in *Beagle* and clarified in *Rist,* persuades me that the trial judge abused his discretion in permitting the prosecutor to introduce against defendant, for the purpose of attacking defendant's credibility as a witness, evidence that defendant had suffered two prior robbery convictions, rather than limiting the prosecutor to the use of a prior burglary conviction for this purpose. I am unable to find that the trial court complied with the legal principle of judicial discretion which "implies [the] absence of arbitrary determination, capricious disposition or whimsical thinking" and which "imports the exercise of discriminating judgment within the bounds of reason." (*In re Cortez* (1971) 6 Cal.3d 78, 85 [98 Cal.Rptr. 307, 490 P.2d 819].)

The errors involved in giving the two instructions which I have discussed and in admitting evidence of defendant's two robbery convictions are prejudicial errors. The evidence of defendant's guilt was highly conflicting and defendant's credibility as a witness was crucial to his defense. My examination of the entire record convinces me that it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the errors discussed herein (*People* v. *Duran* (1976) 16 Cal.3d 282, 296 [127 Cal.Rptr. 618, 545 P.2d 1322]; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]).

I would reverse the judgment of convictions.

. A petition for a rehearing was denied January 9, 1979. Jefferson (Bernard), J., was of the opinion that the petition should be granted. Appellant's petition for a hearing by the Supreme Court was denied February 14, 1979.