[Crim. No. 43686. Second Dist., Div. Two. Nov. 17, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
ULMAN LYNN HAYNES, Defendant and Appellant.

1118

## COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Nancy Gaynor, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GATES, J.**—Ulman Lynn Haynes appeals from the judgment entered following his conviction by jury of rape (Pen. Code, § 261, subd. (2); count II), oral copulation (Pen. Code, § 288a, subd. (c); count III), and sodomy (Pen. Code, § 286, subd. (c); count IV). He contends: "As this was a close case in which there was no prosecution evidence that appellant failed to explain or deny, delivery of CALJIC No. 2.62 constituted prejudicial error."

 Considered in accordance with the usual standard governing appellate review (*People* v. *Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738], the evidence introduced in support of the instant judgment was abundantly sufficient to establish that on April 10, 1981, appellant, after displaying a knife, coerced a 17-year-old high school girl to accompany him into a motel room where he forced her to orally copulate him prior to raping

and sodomizing her. When she was able to extricate herself she immediately reported the incident to the police. Appellant confirmed virtually the entirety of the girl's story except that he asserted she had eagerly accepted his invitations without the need to display any weapons and he, being unaware of her true age, had brought her complete sexual fulfillment and contentment through one act of classic coitus.

The victim, the daughter of a police officer, and her mother testified that after she had attended a school picnic with her classmates she was to spend the weekend at the mother's residence in Pasadena. They arranged to meet at a designated hour at the Los Angeles Times building at First and Spring Streets where the mother was employed. To this end the victim was proceeding to a bus stop on Avalon near 111th Street when accosted by appellant. The motel to which he took her, and where they separated, was on Figueroa near 41st Street. The jury's rejection of appellant's quite implausible version of the event, which was replete with numerous internal inconsistencies, was readily understandable and he does not contend that it was not. Rather, as indicated, he urges only that it was prejudicial error to give CALJIC No. 2.62 (1980 rev.), which reads:

"In this case defendant has testified to certain matters.

"If you find that he failed to explain or deny any evidence against him introduced by the prosecution which he can reasonably be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the more probable.

"In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence.

"The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

■ We heartily agree that in light of the hostile reception this instruction has received of late from legal logicians and semanticists (see *People* v. *Peters* (1982) 128 Cal.App.3d 75, 84 [180 Cal.Rptr. 76]; *People* v. *Campbell* (1978) 87 Cal.App.3d 678, 684 [151 Cal.Rptr. 175]), it will always be

unwise of a trial court to include it among its general instructions without prior inquiry of the parties concerning it. In fact, today it should not even be requested by either side unless there is some specific and significant defense omission that the prosecution wishes to stress or the defense wishes to mitigate. In the typical case it will add nothing of substance to the store of knowledge possessed by a juror of average intelligence. Furthermore, if its terms are adhered to, as presumably they will be, its message will be essentially irrelevant in the absence of some designated glaring hiatus in the defendant's testimony. In such an instance, of course, this lacuna will presumably be the subject of debate and emphasis during the parties' arguments to the jury, with or without the neutral guidelines contained in this recently disfavored instruction.

Similarly, the prosecution's practice of routinely tendering this "form" instruction merely permits the defense, by silently acquiescing therein, to generate an automatic claim of error on appeal. Since trial judges are not as yet omniscient, though some scholars appear to believe they should be, they usually will be unable to recall every nuance of a contested trial, a feat necessarily precedent to a determination that there exists some possible basis for the inference permitted by CALJIC No. 2.62. This is particularly true where, as here, the defense, by failing to object, does not alert the court to its need to achieve total recall, thereby depriving it of the opportunity to require the People either to justify in advance the appropriateness of the instruction or to withdraw it.[1]

In the present instance the instruction now challenged for the first time was not even discussed below nor was its subject matter mentioned by either counsel during his argument to the jury, although in accordance with the trial court's practice it had been given to the jury in advance of argument. As a consequence, we must now, in a retroactive attempt to determine its propriety, search a record in which there are numerous relatively minor instances of appellant's failure either to deny or explain some potentially incriminating facts—unless it can be said his alleged lack of "notice," or inability to "remember," the fact in question constituted a "denial" or an "explanation" thereof as a matter of law. For example, appellant stated he "didn't really notice" that there was a "big sign out in front of the motel

---

[1] The use note appended to CALJIC No. 2.62 in the 1982 Cumulative Pocket Part already stresses the need of the trial court to make inquiry of the prosecution in order to protect the defense from inadvertent oversight, i.e.: "To prevent surprise and unfair advantage it is recommended that the court consider requiring the prosecution to notify the court and defense at close of cross-examination of defendant, or in any event before argument, of intention to request the giving of this instruction, CALJIC 2.62, and to state the claimed evidentiary basis for the instruction so that the court may give the defendant an opportunity to further testify as to any explanation of evidence against him, which explanation he may have overlooked or forgotten to give. [Citation.]"

[to which he had taken his school girl companion] that says, 'Adult Movies,' "[2] nor had he noticed that her condition was such she had put her jumpsuit on inside out when she dressed prior to leaving the motel.

Further, appellant's only reply when asked why he had given a false name and address when registering at the motel was: "[I]t's not uncommon for a person that goes to a motel to not use his true name." We doubt that such an expression of opinion regarding the characteristics of motel users in general, "explains" why the speaker so chose to conduct himself on a given specific occasion. It also is not easy to understand how the mysterious "body language"[3] appellant had told the investigating officer the girl had used, became at trial a simple wave of her hand.

In addition, appellant made no attempt to deny or explain the fact that even under his version of the incident, a young girl had missed an appointment with her mother, engaged in sex with a total stranger immediately after meeting him, and yet, as soon as she separated from him, had taken down his license number[4] and exposed herself, her mother and her officer father, to the embarrassment of reporting all the sordid details of their encounter to the police and, later, to the world at large in a public trial. It could perhaps be argued that as stressed in the challenged instruction itself, this might be an instance in which "a defendant [did] not have the knowledge that he would need to deny or to explain" why anyone would behave in so bizarre a fashion. Nonetheless, it would seem such a possibility should be a question of fact for a jury, not one of law for a trial judge. Certainly, appellant's testimony that after his companion had left the motel room sexually satisfied, she had simply walked away in a strange and "raunchy" part of town, rejecting his offer to ride her downtown but not to Pasadena, did not constitute an "explanation" for her conduct.[5] In truth, if anything, it constituted an admission of an incriminating fact, rather than its denial.

---

[2]Perhaps, this alleged lack of awareness of his surroundings was also intended to explain why appellant, although he had chanced to pick a motel offering hour-long leases, opted, according to his testimony, to turn on the television news for their bedside edification.

[3]"Q. What, if anything did the defendant tell you about the events? A. [Los Angeles Police Officer Verne King]: To the best of my recollection, the defendant stated that he was driving his car on Friday about 5:15 p.m. He was northbound on Avalon. As he approached 111th Street, he saw the chick standing on the corner of 111th Street. He honked a horn at her, and she gave him a sign indicating that she wanted a ride. Q. Did you ask him about the sign or what he meant by a sign? A. I asked him did he mean a piece of paper, a sign, or what. And he referred to it as body language, but, yet, I never could understand what sort of body language that was. To him, he understood her to give him a sign that she wanted a ride."

[4]Appellant did not even bother to comment on the fact his car lacked a front license plate.

[5]Earlier defendant had told Officer King: "Upon completing the sexual intercourse, he got up, cleaned his thing off, dressed himself, and they left the room together, referring to the female. He stated that *for unknown reasons she ran from the location* when they was going toward his car, and that's the last he saw of her." (Italics added.)

However, even if we were to assume that the above instances should have been divined by the court, *sua sponte,* to have been mere contradictions in the testimony of appellant and the prosecution witnesses, rather than failures on his part to explain or deny, still the giving of the challenged instruction would not have constituted reversible error in this instance. (*People* v. *Saddler* (1979) 24 Cal.3d 671, 682 [156 Cal.Rptr. 871, 597 P.2d 130].) The victim's version of the incident, both in her testimony and in her report to the police immediately thereafter, was unequivocal and not inherently improbable. In addition, the trial court gave CALJIC No. 17.31[6] along with CALJIC No. 2.62; and the jurors closely evaluated the evidence and afforded appellant the benefit of all reasonable doubt, as demonstrated by their acquitting him of count I (kidnaping) and count V (sexual intercourse with a woman known to be under 18 years of age). In the circumstances, any theoretical error occasioned by CALJIC No. 2.62 was harmless. (*People* v. *Saddler, supra,* 24 Cal.3d at pp. 683-684; *People* v. *Peters, supra,* 128 Cal.App.3d at pp. 86-87; *People* v. *Campbell, supra,* 87 Cal.App.3d at pp. 685-686.)

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.

---

[6]CALJIC No. 17.31 reads as follows: "You have been instructed as to all the rules of law that may be necessary for you to reach a verdict. Whether some of the instructions will apply will depend upon your determination of the facts. You will disregard any instruction which applies to a state of facts which you determine does not exist. You must not conclude from the fact that an instruction has been given that the court is expressing any opinion as to the facts."