[No. G003721. Fourth Dist., Div. Three. Apr. 7, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
SOPHIA KONDOR, Defendant and Appellant.

[Opinion certified for partial publication.[1]]

[1]Pursuant to California Rules of Court, rule 976(b), parts II and IV are not published, as they do not meet the standards for publication.

**COUNSEL**

W. David Wheeler, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, and Tim Nader, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**SONENSHINE, J.**—Sophia Kondor was convicted by jury of five counts of grand theft (Pen. Code, § 487, subd. 1) and four counts of forgery (Pen. Code, § 470). The jury also found true the allegation that one of the thefts exceeded $25,000. Kondor contends: (1) precomplaint delay in prosecution denied her a fair trial; (2) it was prejudicial error to instruct the jury adverse inferences could be drawn from Kondor's failure to explain evidence against her; and (3) her statements were admitted in violation of *Miranda*.[2]

I

On March 20, 1980, LeRoy McFadden loaned Kondor $18,000, secured by a second trust deed on a house in Palm Springs. Actually, the deed was fraudulent and the lot vacant. Kondor did not tell McFadden she no longer owned the lot, having conveyed it to Kalman Toth nine days earlier.

---

[2]*Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974].

In November, McFadden loaned Kondor an additional $25,000. In exchange, he received a note from Laurence Hopkinson, secured by a second trust deed on a parcel of real property Hopkinson owned. Kondor told McFadden she knew Hopkinson, who needed additional money because he recently purchased the house. In reality, the deed and note were fraudulent; Hopkinson had been dead since 1979.

In January 1981, McFadden again loaned Kondor money, this time in the amount of $35,000. The security for this loan was a deed of trust to property in Riverside and a personal note from Kondor. The deed was fraudulent; there was no such property.

On April 16, Jerry Iacovelli loaned Kondor $20,000. The loan was secured by another forged trust deed on a home in Laguna Hills.

In May and June 1980, Frank Marabello loaned Kondor more than $12,000 in two separate transactions, both secured by fraudulent trust deeds. One of the phony trust deeds was for the same vacant lot Kondor had used earlier in the McFadden transaction.

All the documents Kondor gave the victims bore the notary seal and forged signature of Melvin Miller, who had worked in the same real estate office with Kondor from 1978 to 1981. Miller's notary stamp was kept in an unlocked drawer to which Kondor had access.

In July 1980, Marabello received a letter, purportedly from Dawn Hazard, stating Kondor was hospitalized in Hawaii and Marabello should communicate with Hazard. Marabello's subsequent letters to Hazard were returned by the post office.

Later that month, Marabello's wife, suspecting fraud, attempted to verify the trust deeds at the county recorder's office. An official there detected an irregularity and contacted the local prosecutor. District Attorney Investigator Arnold Appleman was assigned the case.

On November 5, 1981, Kondor, who had been in contact with the victims, requested an interview with Appleman. Kondor admitted the transactions, but denied knowing their fraudulent nature. She maintained she acted merely as a conduit for Dawn Hazard, who provided the trust deeds and, in turn, pocketed the loan proceeds. Kondor stated she, too, had been victimized by Hazard, and had been searching for her since June 1981.

Kondor was arrested August 20, 1984, on assorted fraud-related counts.

### II*

. . . . . . . . . . . . . . . . . . . . . .

### III

■ Kondor contends the trial court committed prejudicial error by instructing the jury, under CALJIC No. 2.62, it could draw adverse inferences from her failure to explain or deny evidence against her.[3] We agree it was error to give the instruction, but find it harmless.

■ A defendant has the right to instructions which are directly relevant to the issues in the case. "The trial court has the duty to instruct on general principles of law relevant to the issues raised by the evidence [citations] and has the correlative duty 'to refrain from instructing on principles of law which not only are irrelevant to the issues raised by the evidence but also have the effect of confusing the jury or relieving it from making findings on relevant issues.' [Citation.] 'It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference' [citations]." (*People* v. *Saddler* (1979) 24 Cal.3d 671, 681 [156 Cal.Rptr. 871, 597 P.2d 130].)

■ At the outset, the trial court must determine whether the facts a defendant fails to explain or deny are within the defendant's knowledge. (*Id.,* at p. 682.) Here, the defendant admitted participating in the transactions, but maintained she was merely a conduit for Hazard, and was unaware the documents were fraudulent. Although the disputed instruction related to the whole of Kondor's testimony, the trial court focused on her

---

*See footnote, *ante,* page 52.

[3]CALJIC No. 2.62 was given as follows: "In this case defendant has testified to certain matters. [¶] If you find that she failed to explain or deny any evidence against her introduced by the prosecution which she can reasonably be expected to deny or explain because of facts within her knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom those unfavorable to the defendant are the more probable. [¶] In this connection, however, it should be noted that if a defendant does not have the knowledge that she would need to deny or to explain evidence against her, it would be unreasonable to draw an inference unfavorable to her because of her failure to deny or explain such evidence. [¶] The failure of a defendant to deny or explain evidence against her does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

failure to notice several trust deeds used in the Marabello and McFadden transactions contained a description of property she no longer owned.[4]

This situation is analogous to that presented in *People* v. *Peters* (1982) 128 Cal.App.3d 75 [180 Cal.Rptr. 76]. There, the defendant was charged with receiving stolen property after the victim's checkbook and check guarantee card were found in the defendant's car behind the driver's sun visor. CALJIC No. 2.62 was given when the defendant testified he did not know the property was in his car. The *Peters* court held it was error to give the instruction because the defendant explained all the facts within his knowledge.

Similarly, Kondor denies knowledge the fraudulent deed contained a description of her property. She explained she only checked the documents for proper notarization, and did not notice the listed address was one of her seven Riverside properties.

The Attorney General argues the jury could conclude Kondor's testimony was so improbable it amounted to no explanation at all. But the test for giving the instruction is not whether the defendant's testimony is believable. CALJIC No. 2.62 is unwarranted when a defendant explains or denies matters within his or her knowledge, no matter how improbable that explanation may appear. Despite contradictions between Kondor's testimony and the testimony of prosecution witnesses, a contradiction does not equate to a failure to explain or deny. (*People* v. *Saddler, supra,* 24 Cal.3d at p. 682.) Having examined the entire record, we are satisfied Kondor explained those matters within her knowledge.

■ Although it was error to give the instruction, reversal is required only when it is reasonably probable a more favorable result would have been reached had the instruction been omitted. Kondor, a licensed real estate broker, told the victims she arranged the loan transactions. All the checks were made out to her. None of the victims ever met Dawn Hazard; indeed, Kondor never mentioned Hazard's name. Two of the fraudulent trust deeds listed Kondor's property. She lied to McFadden when she said Hopkinson, who was dead, needed money for his new home. Although

---

[4] "MR. RONALDSON: I wanted to note for the record we discussed the matters, I believe it was Thursday, and I was opposed to giving 2.62 feeling that Miss Kondor had in fact not failed to explain or deny any evidence against her, and thus the instruction was not appropriate. That's all I have to say. [¶] THE COURT: Well, the Court, as you recall, felt there were some things such as the presence of the description of properties that actually had belonged to Miss Kondor in the transactions, the failure to explain that sort of thing in terms of, I guess, I didn't read that or I guess I didn't see that or something of that nature. It is not an explanation. And the Court feels the instruction was appropriate. Do you have anything else to add?"

Kondor described Hazard's personal and professional life, including Hazard's numerous loan transactions, the district attorney could find no evidence she existed. And a business partner who had known Kondor for 10 years never heard her mention the name Dawn Hazard.

Furthermore, the prejudicial effect of giving CALJIC No. 2.62 was diminished by instructing the jury under CALJIC No. 17.31 to "disregard any instruction which applies to a state of facts which you determine does not exist." Thus, the error resulting from the use of CALJIC No. 2.62 was harmless.

IV*

. . . . . . . . . . . . . . . . . . . . .

Judgment affirmed.

Scoville, P. J., and Crosby, J., concurred.

---

*See footnote, *ante,* page 52.