[No. D038958. Fourth Dist., Div. One. July 31, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
LESLIE ALLEN LAMER, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\* Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts III A and III B.

**COUNSEL**

Rebecca P. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Peter Quon, Jr. and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

A jury convicted the defendant, Leslie Allen Lamer, of 12 counts of lewd and lascivious acts on a child under the age of 14, in violation of Penal Code section 288, subdivision (a). The jury also found true all 10 special allegations of substantial sexual contact with a child under the age of 11, within the meaning of Penal Code section 1203.066, subdivision (a)(8). The trial court sentenced Lamer to a total prison term of 28 years. He timely filed an appeal, contending that the trial court erred in: (1) allowing the People to introduce sexual misconduct propensity evidence under Evidence Code section 1108,

and instructing the jury regarding this evidence, pursuant to CALJIC No. 2.50.01; (2) admitting two videotapes of the victim children describing the abuse, pursuant to Evidence Code section 1360; and (3) instructing the jury, pursuant to CALJIC No. 2.62, that it could draw unfavorable inferences from Lamer's failure to explain or deny evidence against him. In the unpublished portion of this opinion, we find no merit in Lamer's first two contentions. In the published portion, we agree that the trial court improperly gave CALJIC No. 2.62. We conclude, however, that such error was harmless and affirm the judgment of the trial court.

## II.

## FACTS AND PROCEDURAL BACKGROUND

### A. *The Victims*

The victims' mother, Michelle P., met Lamer in February 1991 and lived with him for much of the period between March 1991 and July 1994. During this time, one of the victims, James C., who was then between the ages of four and five, lived with his mother and with Lamer, when Lamer resided with the family. Jessica C., the other victim, who was at the time between the ages of six and eight, also lived with her mother and Lamer through much of the period from March 1991 through March 1992, and with her grandparents after that. Jessica C. visited her mother and Lamer's apartment on a daily basis and occasionally spent the night there.

Although Michelle P. and Lamer broke up in July 1994, and both became romantically involved with other people, they secretly continued to have sexual relations with each other through the beginning of January 1997. Lamer frequently called Michelle P. at her place of work throughout late 1996. Lamer also sent cards and notes to Michelle P. through 1997.

### B. *The Disclosures of the Molestations*

In December 1994, Jessica told her older half sister, Susan G., that Lamer had molested her. Susan G. informed Michelle P., their mother. Michelle P. stated that she did not believe Jessica. In 1995, Jessica tried to tell her mother that Lamer had touched her inappropriately. Her mother responded by suggesting that Lamer did not know where to put his hands. Jessica testified that at the time, her mother accused her of making up the accusations. In late December 1996 or early January 1997, Jessica told a family friend at whose house she was staying that Lamer had molested her. The family friend told Jessica that she should tell her father, which she did.

In January 1997, James disclosed to his mother that Lamer had molested him. A week or so later, Michelle P. asked Jessica if Lamer had molested her, and Jessica replied that he had. Michelle P. called the police that night.

## C. *The Investigation*

On March 20, 1997, Detective Kurt Goldberg contacted Lamer by telephone and informed him that he was investigating child molestation allegations made against Lamer by James and Jessica. Lamer agreed to meet with Goldberg on April 17, 1997. Lamer did not keep that appointment, and Goldberg later learned that Lamer had left the area. A warrant was issued for Lamer's arrest in July 1997. Lamer was arrested in Florida and was extradited to California in December 2000.

## D. *James's Trial Testimony*

At the time of trial, James was 13 years old. He testified that Lamer began molesting him when he was four or five years old. The molestations occurred when Lamer would ask James to lie down on the living room couch with him. Lamer would then touch James's penis and James would touch Lamer's penis. James testified that Lamer had molested him on numerous occasions, mainly in the mornings.

## E. *Jessica's Trial Testimony*

At the time of trial, Jessica was 16 years old. She testified that when she was six years old, Lamer made her sit on top of him and rubbed her against his crotch. She also testified that when she was seven, Lamer would often touch her vagina while they sat together on the living room couch. Jessica also testified that Lamer touched her vagina with his penis numerous times and that he had attempted to put his penis in her anus. Lamer also made Jessica put her mouth on his penis while he watched a pornographic movie. At some point, something wet came out of his penis. Jessica also testified that she saw Lamer molest James.

## F. *The Defense*

Lamer denied that he had molested the children. He also claimed that he could not remember having slept with Michelle P. after 1994, but testified that she had continually attempted to contact him after their relationship ended. Lamer testified that the molestation allegations arose within a month after he told Michelle P. that he and his new wife and her children were planning to move. Lamer also testified that Michelle P. was irate when she learned that he was moving.

## III.

## DISCUSSION

### A. —B.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### C. The Trial Court Committed Harmless Error in Giving CALJIC No. 2.62

Lamer contends that the trial court improperly instructed the jury, pursuant to CALJIC 2.62, that it was entitled to draw certain adverse inferences from his failure to explain or deny the evidence against him. Lamer claims that this improper instruction implicated his constitutional rights and constitutes reversible error. We conclude that it was improper for the trial court to give this instruction, but that the error did not implicate Lamer's constitutional rights, and was harmless.

During the reported portion of the jury instruction conference, the court informed counsel that the People were requesting CALJIC No. 2.62. Defense counsel objected, claiming that the instruction "tends to pinpoint [his] client's testimony." The trial court overruled the objection, stating: "The Court would give 2.62 over the defense's objection. It is an accepted instruction. It [is] specifically referring to the defendant. So it has been accepted that has singling out the defendant [sic], what I should say, and I think there is evidence in the record that the trier of fact may question, for example, testimony by the defendant of his denying, or should I say, some of his failing to explain the basis for James making allegations against him arguably. So there [are] other examples too, and I think that there is sufficient evidence to support giving the instruction."

The jury was instructed as follows:

"In this case defendant has testified to certain matters. If you find that the defendant failed to explain or deny any evidence against him introduced by the prosecution which he can reasonabl[y] be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of this evidence and as indicating that among the inferences that may reasonabl[y] be drawn therefrom those unfavorabl[e] to the defendant are the more probable.

---

*See footnote, *ante*, at page 1463.

"The failure of a defendant to deny or explain evidence against him does not, by itself, warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt.

"If a defendant does not have the knowledge that he would need to deny or to explain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain this evidence."

1. *The Instruction Was Improper Since There Were No Facts or Evidence in the Prosecution's Case Within Lamer's Knowledge That He Failed to Explain or Deny*

"[A]ssertions of instructional error are reviewed de novo." (*People v. Shaw* (2002) 97 Cal.App.4th 833, 838 [118 Cal.Rptr.2d 678].) " 'It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference [citations].' " (*People v. Saddler* (1979) 24 Cal.3d 671, 681 [156 Cal.Rptr. 871, 597 P.2d 130] (*Saddler*), quoting *People v. Hannon* (1977) 19 Cal.3d 588, 597 [138 Cal.Rptr. 885, 564 P.2d 1203].) ▌ An appellate court's duty in reviewing a claim that CALJIC No. 2.62 was improperly given is "to ascertain if [the] defendant ... failed to explain or deny any fact of *evidence that was within the scope of relevant cross-examination*." (*Saddler, supra,* 24 Cal.3d at p. 682, italics added.) In order for the instruction to be properly given "[t]here [must be] facts or evidence in the prosecution's case within [the defendant's] knowledge which he did not explain or deny." (*Ibid.*) A contradiction between the defendant's testimony and other witnesses' testimony does not constitute a failure to deny which justifies giving the instruction. (*Ibid.*) "[T]he test for giving the instruction is not whether the defendant's testimony is believable. CALJIC No. 2.62 is unwarranted when a defendant explains or denies matters within his or her knowledge, no matter how improbable that explanation may appear." (*People v. Kondor* (1988) 200 Cal.App.3d 52, 57 [245 Cal.Rptr. 750].)

▌ Appellate courts have frequently warned that trial courts should carefully consider whether CALJIC No. 2.62 should be given. For example, in *People v. Haynes* (1983) 148 Cal.App.3d 1117 [196 Cal.Rptr. 450], the court stated: "We heartily agree that in light of the hostile reception this instruction has received of late from legal logicians and semanticists (see *People v. Peters* (1982) 128 Cal.App.3d 75, 84 [180 Cal.Rptr. 76]; *People v. Campbell* (1978) 87 Cal.App.3d 678, 684 [151 Cal.Rptr. 175]), it will always be unwise of a trial court to include it among its general instructions without

prior inquiry of the parties concerning it. *In fact, today it should not even be requested by either side unless there is some specific and significant defense omission that the prosecution wishes to stress or the defense wishes to mitigate.* In the typical case it will add nothing of substance to the store of knowledge possessed by a juror of average intelligence. Furthermore, if its terms are adhered to, as presumably they will be, its message will be essentially irrelevant in the absence of some designated glaring hiatus in the defendant's testimony. In such an instance, of course, this lacuna will presumably be the subject of debate and emphasis during the parties' arguments to the jury, with or without the neutral guidelines contained in this recently disfavored instruction." (*People v. Haynes, supra,* 148 Cal.App.3d at pp. 1119–1120, italics added; see also *People v. Marks* (1988) 45 Cal.3d 1335, 1346 [248 Cal.Rptr. 874, 756 P.2d 260].)[4]

As noted above, in this case the trial court stated outside the presence of the jury that it would give CALJIC No. 2.62 because Lamer failed to explain why James would make allegations of sexual molestation against him, and that there were "other examples" of such a failure to explain or deny. Lamer maintains that there "was not a single point on which [he] failed to explain or deny the accusations against him." Lamer's failure to explain why James would lie is the sole ground upon which the People attempt to justify the giving of the instruction.

Lamer did not "fail[] to explain or deny any fact of evidence that was within the scope of relevant cross-examination" with regard to James's motives (*Saddler, supra,* 24 Cal.3d at p. 682). Lamer was not asked any questions on cross-examination regarding James's motivations. Further, there were no facts or evidence in the People 's case regarding James's motivations that could reasonably be said to have been within Lamer's knowledge. (See *id.* at p. 683.) Thus, if Lamer had attempted to explain why James would lie, such testimony would likely have been deemed speculative and therefore, inadmissible. (See *Gherman v. Colburn* (1977) 72 Cal.App.3d 544, 582 [140 Cal.Rptr. 330] ["A witness may not speculate regarding the state of mind of another person absent proper evidence of such state of mind such as declarations or conduct"].)[5] Because there is no evidence that Lamer had

---

[4] We also note that appellate courts have frequently found CALJIC No. 2.62 to have been improperly given. (See, e.g., *Saddler, supra,* 24 Cal.3d at p. 683; *People v. Kondor, supra,* 200 Cal.App.3d at p. 57; *People v. James* (1987) 196 Cal.App.3d 272, 296 [241 Cal.Rptr. 691]; *People v. Marsh* (1985) 175 Cal.App.3d 987, 995 [221 Cal.Rptr. 311]; *People v. De Larco* (1983) 142 Cal.App.3d 294, 308–309 [190 Cal.Rptr. 757]; *People v. Peters* (1982) 128 Cal.App.3d 75, 83–87 [180 Cal.Rptr. 76] [all concluding that CALJIC No. 2.62 was improperly given].)

[5] See also *Gherman v. Colburn, supra,* 72 Cal.App.3d at page 582 ["Clearly the court was correct in sustaining plaintiffs' objections to defense questions propounded to [witness A] regarding his understanding of 'What [witness B] had in mind.' Such testimony by [witness A]

"facts or evidence in the prosecution's case within [his] knowledge" regarding James's motivations (*Saddler, supra,* 24 Cal.3d at p. 682), and any testimony he may have offered on that point would have constituted speculation on his part, it was improper for the court to suggest to the jury that it could draw an adverse inference from Lamer's failure to explain James's motivations. Accordingly, there was "no support for the instruction and it was error to give it." (*People v. Marsh, supra,* 175 Cal.App.3d at pp. 993–995.)

However, we reject Lamer's argument that the instruction violated his constitutional right to due process by requiring him to disprove the existence of an element of the offense. A nearly identical argument was rejected in *Saddler.* That court stated: "It is claimed that the instruction denies to a defendant the presumption of innocence and places in its stead an 'inference of guilt.' Since principles of due process protect the accused against conviction except upon proof beyond a reasonable doubt (*In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]), an instruction to the jury which has the effect of reversing or lightening the burden of proof constitutes an infringement on the defendant's constitutional right to due process. [Citations.] CALJIC No. 2.62 does not violate these principles. After stating the circumstances under which adverse inferences may be drawn, the instruction cautions that 'The failure of a defendant to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of defendant beyond a reasonable doubt.' " (*Saddler, supra,* 24 Cal.3d at p. 679–680.)

The *Saddler* court concluded that the instruction "suffers no constitutional ... infirmity." (*Saddler, supra,* 24 Cal.3d at p. 681.) The version of CALJIC No. 2.62 given in this case contained a similar cautionary statement as did the instruction given in *Saddler.* The instruction did not shift the burden onto the defendant to disprove any element of the People's case.

### 2. *The Error Was Harmless*

 Because Lamer's constitutional rights were not implicated by the instructional error, we apply the harmless error standard adopted in *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]. (See *Saddler, supra,* 24 Cal.3d at p. 683, citing *People v. Watson, supra,* 46 Cal.2d at p. 836; see also *People v. Roehler* (1985) 167 Cal.App.3d 353, 393 [213 Cal.Rptr. 353] [stating that post-*Saddler* case law has held "rather uniformly" that if CALJIC No. 2.62 is given improperly, the *Watson* harmlessness standard applies].) Thus, the relevant inquiry is whether it is "reasonably probable that

would have constituted speculation regarding the state of mind of another person, and such speculation would have been both incompetent and irrelevant"].

a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson, supra,* 46 Cal.2d at p. 836.)

Although, as noted above, courts have frequently found giving CALJIC No. 2.62 to constitute error, we have not found a single case in which an appellate court found the error to be reversible under the *Watson* standard. ▋ On the contrary, courts have routinely found that the improper giving of CALJIC No. 2.62 constitutes harmless error. (See, e.g., *Saddler, supra,* 24 Cal.3d at p. 684; *People v. James, supra,* 196 Cal.App.3d at p. 296; *People v. Marsh, supra,* 175 Cal.App.3d at p. 994; *People v. Peters* (1982) 128 Cal.App.3d 75, 83–87 [180 Cal.Rptr. 76] [all concluding that CALJIC No. 2.62 was improperly but harmlessly given].)

One reason courts have found the improper giving of CALJIC No. 2.62 to be harmless is that the text of the instruction itself tells the jury that it would be *unreasonable* to draw an adverse inference if the defendant lacks the knowledge needed to explain or deny the evidence against him. As the court in *People v. Ballard* (1991) 1 Cal.App.4th 752, 756 [2 Cal.Rptr.2d 316], noted: "CALJIC No. 2.62 does not direct the jury to draw an adverse inference. It applies only if the jury finds that the defendant failed to explain or deny evidence. It contains other portions favorable to the defense (suggesting when it would be unreasonable to draw the inference; and cautioning that the failure to deny or explain evidence does not create a presumption of guilt, or by itself warrant an inference of guilt, nor relieve the prosecution of the burden of proving every essential element of the crime beyond a reasonable doubt)." In addition, courts have noted that the fact that juries are instructed, pursuant to CALJIC No. 17.31, to "disregard any instruction which applies to a state of facts which you determine does not exist," also mitigates any prejudicial effect related to the improper giving of CALJIC No. 2.62. (*Saddler, supra,* 24 Cal.3d at p. 684.)

Before reviewing the evidence in this case to determine whether or not it is reasonably probable that a result more favorable to Lamer would have been reached if the court had not given CALJIC No. 2.62, it is useful to examine the California Supreme Court's harmless error analysis in *Saddler,* which is the leading case on this instruction. In *Saddler,* there was a "clear conflict" between the testimony of the one eyewitness to the crime and the defendant's alibi, as well as "little corroborating evidence" of the defendant's guilt. (*Saddler, supra,* 24 Cal.3d at p. 683.) Further, the challenged instruction was not given in a previous trial on the same charges, and that trial resulted in a hung jury. (*Id.* at pp. 683–684.) Nevertheless, based largely on the strength of the one eyewitness's testimony, the *Saddler* court concluded that giving CALJIC No. 2.62 was harmless. (*Id.* at p. 684; see also *Haynes, supra,* 148 Cal.App.3d at p. 1122 [concluding that any error in giving CALJIC No. 2.62

would have been harmless where defendant claimed intercourse was consensual, but testimony of sexual assault victim was "unequivocal and not inherently improbable"].)

The evidence against Lamer was significantly stronger than was the evidence against Saddler. In this case, there was highly credible testimony from the victims regarding repeated sexual abuse at the hands of the defendant. There also was substantial corroborating evidence, including Jessica witnessing James being molested, multiple consistent disclosures over time by the two victims, and the propensity evidence. Further, although Lamer denied having committed the acts charged, his credibility was effectively impeached.[6] For example, at trial, Lamer claimed not to have known that the police were investigating this case during the three years he was living out of state. However, Detective Goldberg testified that in March 1997, he had spoken to Lamer and had informed him of the investigation. Lamer also claimed that he could not remember carrying on a sexual relationship with Michelle P. beyond 1994 and maintained that she had continually attempted to contact him. Yet he had no plausible explanation for the numerous phone calls that *he* placed to Michelle P. in 1996 or for the romantic Christmas card she received from him in 1996.

In addition to the strength of the People's evidence and Lamer's lack of credibility, there was no reference made by the People during closing argument to Lamer having failed to explain James's motivations for claiming that Lamer had abused him. Nor was there any reference to CALJIC No. 2.62. On the contrary, rather than focusing on what the defendant had *failed* to explain or deny, the People provided a detailed description of all the ways in which the defendant had explained and denied his activities by *lying*. Further, the court instructed the jury with CALJIC No. 17.31. Under these circumstances, it is not reasonably probable that a result more favorable to Lamer would have been reached in the absence of the error. (*Watson, supra,* 46 Cal.2d at p. 836.) Accordingly, we conclude that the giving of CALJIC No. 2.62 was harmless error.

---

[6] We note that the trial court, at sentencing, reached the same conclusion with regard to the defendant's credibility that we have reached in reviewing the appellate record. The trial court stated: "The defendant has lied about many things during the course of this trial. He's lied about the [Susan G.] incident. He's lied about having an affair with Michelle [P.]. He's lied about his conduct with James. He's lied about his conduct with Jessica. He's lied about the issues of greeting cards and correspondence and the details of his continual relationship with Michelle. He's lied about the detective calling him. And he's lied about whether or not he fled the jurisdiction. [¶] His story is really incredible when you consider all of what other people have testified. And according to him, there is this great conspiracy of everybody else to lie about what's happening."

## IV.

## CONCLUSION

The trial court did not err in admitting sexual misconduct propensity evidence pursuant to Evidence Code 1108 and instructing the jury pursuant to CALJIC No. 2.50.01, and did not err in admitting videotapes of the victim children describing the abuse, pursuant to Evidence Code 1360. The trial court improperly instructed the jury, pursuant to CALJIC No. 2.62, that it could draw adverse inferences from Lamer's failure to explain or deny evidence against him, but this error was harmless.

## V.

## DISPOSITION

The judgment is affirmed.

Benke, Acting P. J., and McDonald, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 15, 2003. Baxter, J., did not participate therein.