Filed 1/6/21  P. v. Martinez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B302410 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA089911) |
| v. | |
| ROBERT MARTINEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  David W. Stuart, Judge.  Affirmed.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Robin Urbanski and Mary Katherine Strickland, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

Robert Martinez appeals from a judgment which sentences him to state prison for attempted voluntary manslaughter, possession of an assault weapon, and assault with a semiautomatic firearm.  Martinez argues the trial court prejudicially erred when it instructed the jury with Judicial Council of California Criminal Jury Instructions (CALCRIM) Nos. 361 and 372.  We affirm the judgment.

**FACTS**

On October 25, 2017, Martinez shot his cousin, Jeffrey Smith, in the left arm and chest.  Smith was asleep with his girlfriend in a shed in the backyard of their grandmother's home.  Smith survived the shooting and his girlfriend was unhurt.  Their uncle, Mario Sanchez, witnessed the incident.  Martinez was arrested at his home approximately one month after the shooting.  He consented to a search and officers recovered ammunition and a TEC-9 assault pistol, which is illegal in California.

After waiving his rights under *Miranda v. Arizona* (1966) 384 U.S. 436, Martinez admitted in two recorded interrogations to shooting Smith but claimed it was in self-defense.  He explained he had an ongoing feud with Smith, who often threatened him and had previously sent people to assault him.  As a result, Martinez believed his life was in danger.  On the day of the incident, he decided to visit his grandmother, who had been in ill health for several years.  Because he knew Smith and his friends were often in the area, he wore a bulletproof vest and carried a gun.

Martinez explained to the officers he built the gun himself by buying parts online.  He referred to it as a "ghost gun" because it was not registered and untraceable.  Martinez described the

type of bullets he favored as "RIP" rounds and compared them to hollow point bullets. He said the rounds were expensive but "[w]ell worth it . . . if you really need to put someone down." He admitted he used the RIP rounds to shoot Smith.

Martinez told the officers he began to "search the perimeter" after he arrived at his grandmother's home. He almost immediately encountered Smith in the backyard shed. He and Smith fought. He twice shot at Smith; first aiming for the center of his chest and then aiming for Smith's head. Martinez characterized the second shot as the "money shot" because it is used "when you need to put somebody down . . . ." At that point, Sanchez attempted to intervene by restraining and punching Martinez. Martinez's gun discharged accidentally a third time as he extricated himself from Sanchez. He then got "the hell out of there."

Martinez also told officers he regretted not killing Smith. He stated, "there's no point of going down for attempted murder" because he saw it as a "bigger liability." He reiterated, "I fucked up. I got attempted versus murder, turns into a liability." When the officers recalled Smith was shot last year by someone else, Martinez said, "I wish that was me, too."

Martinez was charged with attempted premeditated and deliberate murder (Pen. Code, §§ 664, 187; count 1)[1]; possession of an assault weapon (§ 30605, subd. (a); count 2), and assault with a semiautomatic firearm (§ 245, subd. (b); count 3). Firearm enhancements pursuant to section 12022.53, subdivisions (b)–(d) and section 12022.5, subdivision (a) were alleged as to count 1. Additionally, it was alleged Martinez personally inflicted great

---

[1] All further section references are to the Penal Code.

3

bodily injury on Smith within the meaning of section 12022.7, subdivision (a) as to counts 1 and 3.

At trial, the prosecution presented testimony from Sanchez, Smith, and the investigating officers regarding the circumstances surrounding the shooting. Martinez's statements during his interrogations were also played to the jury.

Martinez testified in his own defense. He explained he and Smith lived at their grandmother's house in 2014. His grandmother asked both of them to leave after she had to break up a fight between them on September 18, 2014. Martinez was hospitalized and Smith suffered a broken rib as a result of the fight. Martinez's aunts, Linda Martinez and Rosie Martinez, confirmed Smith did not have permission to live on the property at the time of the incident. As a result, Martinez did not expect to find Smith at his grandmother's home that day.

Martinez testified he decided to retrieve a few items from his family's storage shed before seeing his grandmother. According to Martinez, Smith opened the door to the shed and attacked him. They exchanged blows. Martinez fired his gun, hitting Smith. He gave conflicting testimony about whether Smith had a gun in his hand or was reaching for one when Martinez fired the first shot. According to Martinez, Smith continued to raise his firearm after the first shot and appeared to advance in Martinez's direction when Martinez fired the second shot.

Sanchez then attempted to restrain Martinez. They struggled and his gun accidentally discharged. Martinez broke free from Sanchez and walked to his bicycle while Sanchez continued to punch him in the chest from behind. A defense

expert diagnosed Martinez with a neurocognitive disorder and posttraumatic stress disorder.

The jury found Martinez guilty of attempted voluntary manslaughter (§§ 664 & 192, subd. (a)), a lesser-included offense of attempted murder, possession of an assault weapon (§ 30605, subd. (a)), and assault with a semiautomatic firearm (§ 245, subd. (b)). The jury also found true the allegations that Martinez inflicted great bodily injury (§ 12022.7, subd. (a)) and personally used a firearm (§ 12022.5, subd. (a)) as charged in counts 1 and 3.

Martinez was sentenced to a total of 19 years and eight months in state prison. This was comprised of the midterm of six years for assault with a semiautomatic firearm plus eight months for possession of an assault weapon. In addition, the trial court imposed a 10-year term for the firearm enhancement under section 12022.5 and an additional three years for the great bodily injury enhancement under section 12022.7.

Martinez timely appealed.

## DISCUSSION

Martinez contends the trial court prejudicially erred by instructing the jury with CALCRIM No. 361, which addresses a testifying defendant's failure to explain or deny evidence against him that was within his knowledge, and CALCRIM No. 372, which addresses a defendant's flight from the scene of a crime. He claims there was no evidentiary basis to support either instruction. We conclude the instructions were warranted given the evidence adduced at trial. Moreover, any error was harmless since the evidence against Martinez was overwhelming.

We review Martinez's instructional claims de novo. (*People v. Alvarez* (1996) 14 Cal.4th 155, 217; *People v. Berryman* (1993) 6 Cal.4th 1048, 1089, overruled on a different ground by *People v.*

*Hill* (1998) 17 Cal. 4th 800, 823.) Courts have uniformly applied the harmless error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*), when reviewing claims of instructional error. (*People v. Vega* (2015) 236 Cal.App.4th 484, 501; *People v. Lamer* (2003) 110 Cal.App.4th 1463, 1471.) Under that standard, reversal is warranted only if it is reasonably probable the defendant would have obtained a more favorable result in the absence of the error. (*Watson, supra,* at p. 836.)

## I.     The Trial Court Properly Gave CALCRIM No. 361

Martinez argues CALCRIM No. 361 was improvidently given because he did not fail to explain or deny any material fact within his knowledge during cross-examination. He instead fully described the shooting and his possession of an assault weapon. The record demonstrates otherwise.

The trial court instructed the jury with CALCRIM No. 361 as follows: "If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt. If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure."

"[T]he instruction applies only when a defendant completely fails to explain or deny incriminating evidence, or claims to lack knowledge and it appears from the evidence that the appellant could reasonably be expected to have that knowledge." (*People v. Cortez* (2016) 63 Cal.4th 101, 117 (*Cortez*).) In *Cortez*, the Supreme Court held the instruction was properly given where a defendant previously provided detailed

6

statements to police regarding a gang-related shooting, but at trial, testified she did not know why or how the shooting occurred. (*Id.* at p. 122; see also *People v. Saddler* (1979) 24 Cal.3d 671, 682 (*Saddler*) [holding that CALJIC No. 2.62, the equivalent of CALCRIM No. 361, is appropriate when there are "facts or evidence in the prosecution's case within [appellant's] knowledge which he did not explain or deny"].)

Martinez likewise testified he did not recall certain facts that he previously relayed to police officers in detail. During his recorded interrogation, Martinez told officers he built a gun. When the officer asked if he built an "untraceable" gun, Martinez responded, "Yeah. A ghost gun." At trial, the prosecutor asked him, "you built it because it was a ghost gun?" Martinez responded he did not recall why he built the gun. He also testified the term "ghost gun" was "new" to him. The prosecutor challenged this assertion by playing the recorded interrogation to him and asking, "You knew what a ghost gun was, didn't you?" He responded, "Apparently," but failed to explain the discrepancy.

Just as in *Cortez*, these were facts or evidence in the prosecution's case about which Martinez "claims to lack knowledge and it appears from the evidence that the defendant could reasonably be expected to have that knowledge." (*Cortez, supra*, 63 Cal.4th at p. 117.) At a minimum, Martinez could reasonably be expected to know why he built a gun. Accordingly, there was no error when the trial court instructed the jury with CALCRIM No. 361.

Even if it was error to give CALCRIM No. 361, however, it was harmless because there was overwhelming evidence of Martinez's guilt. He confessed to shooting Smith during his

7

interrogations and at trial. He admitted he wore a bullet proof vest and carried a "ghost gun" loaded with RIP bullets designed "to put someone down" when he went to his grandmother's house. When he arrived there, he did not go to the main house to see her but instead immediately walked to the shed where Smith and his girlfriend were staying. Although he knew he had shot Smith, he then left without rendering aid or calling for paramedics. He later admitted to officers he wished he had succeeded in killing Smith.

Beyond the strength of the evidence against him, CALCRIM No. 361 cautions the jury that any failure in the defendant's testimony "is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt." CALCRIM No. 361 also instructs its use by the jury is conditional in that it may only be applied "[i]f the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew . . . ." The conditional use of CALCRIM No. 361 is reinforced by CALCRIM No. 200, which instructed the jury that "[s]ome of these instructions may not apply," and you should "follow the instructions that do apply to the facts as you find them." Courts have recognized that CALCRIM No. 200 mitigates any prejudicial effect resulting from an instruction based on CALCRIM No. 361, because one can assume the jury disregarded CALCRIM No. 361 if it determined there was no adverse evidence Martinez failed to explain or deny. (See *Saddler, supra*, 24 Cal.3d at p. 684; *People v. Lamer, supra*, 110 Cal.App.4th at p. 1472.)

In view of the evidence against him and the instructions given, we cannot say it is "reasonably probable that a result more

8

favorable to [Martinez] would have been reached in the absence of the error." (*Watson, supra*, 46 Cal.2d at p. 836.)

## II.    The Trial Court Properly Gave CALCRIM No. 372

Martinez next argues the trial court erred when it instructed the jury with CALCRIM No. 372.  Martinez contends there was no evidence he left the scene of the shooting to avoid detection or arrest.  He asserts he left because Sanchez continued to punch him in the chest.  Moreover, his subsequent cooperation with the police demonstrated he lacked a guilty mindset.  We disagree.

CALCRIM No. 372 provides:  "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled cannot prove guilt by itself."  This instruction is properly given if there is any evidence from which a juror could reasonably infer a defendant's departure from the crime scene was motivated out of consciousness of guilt.  (*People v. Cage* (2015) 62 Cal.4th 256, 285.)  "Evidence that a defendant left the scene is not alone sufficient; instead, the circumstances of departure must suggest 'a purpose to avoid being observed or arrested.'  To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.)

9

*People v. Bradford* (1997) 14 Cal.4th 1005 (*Bradford*), a case relied upon by Martinez, is instructive. There, the Supreme Court found a similar flight instruction[2] was properly given. In *Bradford,* the defendant did not leave the apartment building in which the murder occurred but he left the apartment in which he killed the victim and told someone, " 'I really got to get the hell out of here.' " (*Id.* at p. 1019.) He packed his belongings, asked a friend who lived in a different city if he could stay with her, and repeatedly asked his roommate to drive him out of town. (*Id.* at p. 1020.) The high court concluded, "[t]his is sufficient evidence to warrant instructing the jury to determine whether flight occurred, and, if so, what weight to accord such flight. [Citation.] Moreover, the instruction given adequately conveyed the concept that if flight was found, the jury was permitted to consider alternative explanations for that flight other than defendant's consciousness of guilt." (*Id.* at p. 1055.)

Martinez likewise told officers he had to get "the hell out of there" after the shooting. Moreover, when Sanchez released the magazine from the gun and it fell to the ground during their struggle, Martinez made sure to retrieve it before he left. From these facts, the jury could permissibly infer a consciousness of

---

[2] CALJIC No. 2.52 was given as follows: " 'The flight of a person immediately after the commission of a crime is not sufficient in itself to establish his guilt, but is a fact which, if proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. If there was such flight, the weight to which such circumstance is entitled is a matter for the jury to determine.' " (*Bradford, supra,* 14 Cal.4th at p. 1054, italics omitted.)

guilt.  Just as the *Bradford* court did, we conclude this was sufficient evidence to warrant a flight instruction.

Martinez claims he left because Sanchez continued to punch him, not to avoid arrest.  This alternate theory of the evidence does not negate the equally permissible inference of consciousness of guilt discussed above.  In any case, Martinez told police he got away from Sanchez by simply turning around; he did not need to hit Sanchez.  He also admitted his life "wasn't completely threatened" by Sanchez.  Moreover, Sanchez testified he only punched Martinez once, and its force was impeded by the bullet proof vest and only hurt his arm.  This evidence would tend to show Martinez did not leave the scene because of Sanchez's conduct.

Martinez further argues CALCRIM No. 372 impermissibly diluted the prosecution's burden of proof and emphasized a state of mind not supported by the evidence.  As a result, his due process and fair trial rights under the Fifth and Fourteenth Amendments were violated.  We find no error resulted from the trial court's flight instruction to the jury, and Martinez fails to provide any support for a constitutional violation on that basis.

In any case, we have concluded the evidence of guilt was overwhelming.  Any error was thus harmless.  Martinez contends the error was of "federal constitutional dimension" and thus we must examine the issue under the standard set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).  We need not address whether this is the proper standard to apply because we see no probability that the jury's verdicts might have been different had the flight instruction not been given, even if the *Chapman* standard is applied.

11

## DISPOSITION

The judgment is affirmed.


BIGELOW, P. J.

We Concur:


GRIMES, J.


WILEY, J.


12