Filed 2/17/23 P. v. Zendejas CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B315600 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA122153) |
| v. | |
| GERARDO JESUS ZENDEJAS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho, Judge. Affirmed.

Mark S. Givens, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior

Assistant Attorney General, Wyatt E. Bloomfield and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

---

**INTRODUCTION**

On August 12, 2021, a jury found defendant and appellant Gerardo Jesus Zendejas guilty of the September 20, 2019, first degree murder of Phillip Pena. The jury found true a special circumstance allegation that Zendejas committed the murder by lying in wait. On October 7, 2021, the trial court sentenced Zendejas to life in prison without the possibility of parole.

Zendejas contends the trial court made three instructional errors, which Zendejas contends prejudiced him both individually and cumulatively. The claimed errors are: (1) the denial of a defense request for a jury instruction on a heat of passion theory of voluntary manslaughter based on his testimony that he learned the night before the murder that Pena had raped Zendejas's girlfriend; (2) the court's failure to instruct the jury sua sponte on the defense theory of mistake of fact based on Zendejas's testimony that he mistakenly believed Pena's car was unoccupied when Zendejas and his accomplice fired multiple shots into the vehicle and then set it ablaze; and (3) the court's delivery of the CALCRIM No. 361 instruction, which stated that the jury could consider Zendejas's failure, if any, to explain or deny evidence against him in evaluating that evidence.

2

Zendejas asks this court to reverse the judgment.  Finding no prejudicial error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND
### A. Prosecution Case

At about 4:00 a.m. on September 20, 2019, police officers responded to a 911 call concerning gunshots and a fire outside a house with a detached apartment in Pomona. The officers found Pena's car parked outside his apartment, engulfed in flames.  After the fire was extinguished, Pena's charred body was found in the driver's seat.  An autopsy determined the cause of Pena's death was two shotgun wounds to his chest.

Officers found five spent shotgun cartridges at the crime scene, along with a striker cap used to ignite a road flare.  They also found a baseball hat inside Pena's car. Zendejas's DNA was on the baseball hat and the striker cap.

Police officers searched Zendejas's La Habra apartment and found a semiautomatic shotgun, which a criminalist opined had fired the spent cartridges found at the scene. Zendejas's DNA was found on the shotgun's trigger. Handwritten notes found in Zendejas's car indicated that Zendejas had surveilled Pena's apartment for several days beginning on September 3, 2019, and that Zendejas had noted Pena regularly arrived home from work after 2:30 a.m.

Surveillance videos from the bar in Upland where Pena worked and from a house across the street from Pena's apartment showed that, on September 20, 2019, Pena left

3

work in his car around 3:22 a.m. and parked outside his apartment at 3:42 a.m. The apartment surveillance video showed that shortly before Pena arrived, Zendejas's car drove by Pena's apartment three times. After Pena arrived, Zendejas's car drove by again, then made a U-turn and pulled up next to Pena's car, which was illuminated by streetlights, at 3:53 a.m. The video then flashed repeatedly in a manner consistent with muzzle flashes from at least four gunshots. An occupant of Zendejas's car then poured liquid inside and on top of Pena's car and set the car on fire using an open flame. Zendejas's car then drove away from the scene.

### B. Defense Case

Zendejas testified at his trial. He testified that he saw extensive bruises on his then-girlfriend, Alexandria O. on September 3, 2019, and that she told him Pena had beaten her during a drug transaction and informed him where Pena lived. Zendejas admitted he surveilled Pena's apartment for several days beginning on September 3, 2019, but claimed he did so merely because he planned to expose Pena's drug activity to the police. Zendejas further testified that, between 10:00 p.m. and midnight the night before Pena's death in the early morning of September 20, Alexandria told him for the first time that Pena had raped her. According to his testimony, this revelation made Zendejas angry and sad. He consoled Alexandria and attempted to convince her to report the rape, but she refused. He dropped her off at her

4

home in Pomona before midnight then returned to his own home in La Habra.

Zendejas testified that, when he arrived home, he paused to "reflect" on what Alexandria had told him. He snorted methamphetamine three or four times and proceeded to "think" and "dwell on the situation" even more. It was in this intoxicated state of mind that he decided to set fire to Pena's car. He prepared to carry out his plan by readying gasoline, a road flare, and his shotgun, which he testified he removed from a locked box and placed in the rear seat of his car. He communicated his plan to a friend, who he said tried and failed to dissuade him and ultimately became his accomplice.

Around 1:00 a.m., Zendejas drove with his accomplice to Pomona, where Zendejas again paused to "reflect." After using more methamphetamine, Zendejas drove to Upland to check on a security guard whose work he supervised. Around 3:00 a.m., he drove to Pena's apartment in Pomona. On the way, he further considered his plan to throw gasoline into Pena's car after his accomplice shot out a window and instructed his accomplice to load his shotgun with buckshot rather than slugs so the window would "blow open."

After arriving at Pena's street, Zendejas circled the block several times until Pena arrived home, then passed by Pena's car before making a U-turn and pulling up alongside it. As planned, his accomplice fired Zendejas's shotgun, blowing a hole in the driver's window of Pena's car. Zendejas forced a can of gasoline through the hole. He then ignited a

road flare and threw it inside Pena's car "without looking." He claimed he did not see Pena inside the car. After Pena's car went up in flames, Zendejas and his accomplice left and returned to Zendejas's apartment.

During cross-examination, Zendejas repeatedly refused to answer the prosecutor's questions concerning the identity of his accomplice, stating he did not want to "throw anybody under the bus." The prosecutor played portions of a recorded police interview taken following Zendejas's arrest on September 26, 2019. At that time, after being advised of his constitutional rights, Zendejas told police he had wanted to "'tune up'" Pena and also claimed Pena had pulled a gun when Zendejas and his accomplice approached Pena's car.

### C. Jury Instructions, Closing Arguments, and Judgment

The court instructed the jury on four theories of first degree murder, all except felony murder requiring a finding by the jury that Zendejas acted with intent to kill or injure. The court instructed the jury that, if it found Zendejas guilty of first degree murder, it must also decide, inter alia, whether the People had proved the special circumstance allegation that Zendejas committed the murder by means of lying in wait. The lying-in-wait special circumstance instruction, CALCRIM No. 728, provided that the People were required to prove, inter alia, that Zendejas waited and watched for an opportunity to launch a surprise attack, in a manner showing a state of mind equivalent to premeditation

6

and deliberation. The instruction further provided: "The defendant acted *deliberately* if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with *premeditation* if he decided to kill before committing the act that caused death."

The trial court granted the prosecutor's request to instruct the jury with CALCRIM No. 361 based on Zendejas's refusal to disclose the identity of his accomplice. The instruction stated that: "If the defendant failed in his testimony to explain or deny evidence against him, and if he could reasonably be expected to have done so based on what he knew, you may consider his failure to explain or deny in evaluating that evidence. Any such failure is not enough by itself to prove guilt. The People must still prove the defendant guilty beyond a reasonable doubt. [¶] If the defendant failed to explain or deny, it is up to you to decide the meaning and importance of that failure." The court denied defense counsel's request for an instruction on a heat of passion theory of voluntary manslaughter. Defense counsel did not request an instruction on a mistake theory.

The prosecutor argued that Zendejas was guilty of first degree murder under all four theories and that his conduct in circling Pena's apartment while waiting to ambush Pena upon arrival constituted lying in wait. Defense counsel urged the jury to believe Zendejas's testimony that he mistakenly believed Pena's car was unoccupied, which she argued showed he lacked intent to kill. In rebuttal, the

prosecutor argued that Zendejas's mistake claim was not credible but acknowledged that if the jury believed his testimony, it should find he lacked intent to kill. During closing argument, the prosecutor neither mentioned CALCRIM No. 361 nor argued that Zendejas had failed to explain or deny adverse evidence.

On August 12, 2021, the jury returned verdicts convicting Zendejas of first degree murder and finding true, inter alia, the lying-in-wait special circumstance allegation. The jury separately convicted Zendejas of shooting at an occupied motor vehicle. On October 7, 2021, the court sentenced Zendejas to life in prison without possibility of parole. Zendejas timely appealed.

## DISCUSSION

Zendejas asks this court to reverse the judgment due to the prejudicial effect of the following claimed instructional errors: (1) the trial court's denial of defense counsel's request for a jury instruction on the heat of passion theory of voluntary manslaughter, based on Zendejas's testimony that he learned the night before the murder that Pena had raped Zendejas's girlfriend; (2) the court's failure to instruct the jury sua sponte on the defense theory of mistake of fact, based on Zendejas's testimony that he mistakenly believed Pena's car was unoccupied; and (3) the court's delivery of CALCRIM No. 361, which stated that the jury could consider Zendejas's failure, if any, to explain or deny evidence against

him in evaluating that evidence. For reasons discussed below, we find no prejudicial error and affirm the judgment.

### A. *The Trial Court Properly Denied Defense Counsel's Request for a Heat of Passion Instruction*

Pointing to his own testimony that he ambushed Pena's car within hours of learning Pena had raped Alexandria, Zendejas contends that the trial court erred in denying his request for a jury instruction on the heat of passion theory of voluntary manslaughter, a lesser included offense of murder. A trial court is required to instruct the jury on this theory only where there is substantial evidence that the defendant is guilty of voluntary manslaughter rather than murder. (See *People v. Vargas* (2020) 9 Cal.5th 793, 827.) "'"[T]he factor which distinguishes the 'heat of passion' form of voluntary manslaughter from murder is provocation."' [Citation.] 'To be adequate, the provocation must be one that would cause an emotion so intense that an ordinary person would simply *react*, without reflection. . . . [T]he anger or other passion must be so strong that the defendant's reaction bypassed his thought process to such an extent that judgment could not and did not intervene.'" (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 649-650 (*Beck*).) A heat of passion killing is "'manifestly inconsistent'" with premeditation and deliberation. (*People v. Peau* (2015) 236 Cal.App.4th 823, 831 (*Peau*), quoting *People v. Wharton* (1991) 53 Cal.3d 522, 572.)

We conclude the trial court properly denied defense counsel's request for a heat of passion instruction because there was not substantial evidence that Zendejas acted in a heat of passion. The evidence at trial instead showed that Zendejas began surveilling Pena's apartment more than two weeks before Pena's death. He admitted that, shortly before Pena's death, he drove to Pena's apartment and then circled the block repeatedly until he saw Pena's car parked out front. Zendejas acknowledged that, in the hours leading up to Pena's death, he more than once paused to "reflect," both before and after he planned his ambush of Pena's car. All of this is inconsistent with a heat of passion as a matter of law. (See *Beck*, *supra*, 8 Cal.5th at 650.)

To the extent Zendejas claimed at trial to have acted in an altered mental state, he attributed this state to his voluntary intoxication from methamphetamine, not provocation. Even in his intoxicated state, moreover, he retained the presence of mind to adhere to his plan in the face of his accomplice's attempts to talk him out of it, and to instruct his accomplice to use the type of shotgun ammunition that would be most effective in executing his plan. "[N]o principle of law required the trial judge below to disregard the evidence in order to find that the jury should consider whether defendant subjectively killed in the heat of passion, when no substantial evidence supported that theory of manslaughter, and the evidence actually introduced on the point—the defendant's own testimony—was to the contrary." (*People v. Moye* (2009) 47 Cal.4th 537, 554.)

10

Moreover, even if the court had erred in denying Zendejas's request for a heat of passion instruction, it would have been harmless. The jury here necessarily decided the factual questions presented by a heat of passion defense adversely to Zendejas under properly given instructions. (*Peau*, *supra*, 236 Cal.App.4th at 830.) The jury's finding of lying in wait necessarily included a determination that Zendejas acted with a state of mind equivalent to premeditation and deliberation. Because this determination is manifestly inconsistent with a heat of passion theory, any error in the omission of a heat of passion instruction would have been harmless. (See *People v. Wang* (2020) 46 Cal.App.5th 1055, 1071-1072 [omission of heat of passion instruction was harmless beyond a reasonable doubt because jury found defendant premeditated and deliberated the killing], review denied June 24, 2020; *Peau*, *supra*, 236 Cal.App.4th at 830-832 [same].)

### B. The Trial Court Had No Sua Sponte Duty to Instruct the Jury on Mistake of Fact

Zendejas points to his own testimony that he mistakenly believed Pena's car was unoccupied when he and his accomplice shot the car and set it ablaze and contends that the trial court erred in failing to instruct the jury sua sponte on the defense theory of mistake of fact. We disagree. Because defense counsel did not request a mistake of fact instruction, the court had no duty to deliver one. (*People v. Speck* (2022) 74 Cal.App.5th 784, 791 ["The trial court does

not have a sua sponte duty to give a mistake of fact instruction"].)

In his reply brief, Zendejas contends for the first time that defense counsel's failure to request such an instruction deprived him of his constitutional right to the effective assistance of counsel. Zendejas has forfeited this claim by failing to raise it in his opening brief. (See *People v. Silveria and Travis* (2020) 10 Cal.5th 195, 255.) Even if timely raised, Zendejas's ineffective assistance claim would be without merit. To establish ineffective assistance of counsel, an appellant bears the burden of showing prejudice, meaning "'"a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different."'" (*People v. Hoyt* (2020) 8 Cal.5th 892, 958.)

Both counsel indicated in closing arguments that, if the jury believed Zendejas's mistake claim, then it should find he lacked intent to kill or injure Pena, an element of three of the four theories of first degree murder on which the court instructed the jury. Moreover, Zendejas's claim that he mistakenly believed Pena's car was unoccupied was contradicted by the evidence that he told police at the time of his arrest that he had seen Pena draw a gun, that he had been circling the block and therefore had reason to know Pena had just arrived home, and that the car was in a well-lit location and that Zendejas had to get very close to the car to get the gas and flare inside. In light of all of this, it is not reasonably probable that the outcome of the proceeding

12

would have been different had defense counsel requested a mistake of fact instruction. (See *People v. Hoyt, supra,* 8 Cal.5th at 958.)

### C. Any Error in the Delivery of CALCRIM No. 361 Was Harmless

Zendejas contends that the trial court erred in instructing the jury with CALCRIM No. 361, which provided that the jury could consider Zendejas's failure, if any, to explain or deny evidence against him in evaluating that evidence. "[T]he focus of CALCRIM No. 361, as its language indicates, is not on the defendant's credibility as a witness, but on the role of a testifying defendant's failure to explain or deny incriminating evidence in how jurors 'evaluat[e] that evidence,' i.e., the evidence the defendant has failed to explain or deny." (*People v. Cortez* (2016) 63 Cal.4th 101, 118.) The instruction left it to the jury to determine whether Zendejas had failed to explain or deny adverse evidence and, if so, whether this failure had any significance. In closing arguments, the prosecutor neither mentioned this instruction nor argued that Zendejas had failed to explain or deny adverse evidence. Because it is not reasonably probable that the court's delivery of CALCRIM No. 361 affected the outcome of the trial, we conclude that any error by the trial court in delivering this instruction was harmless. (See *People v. Lamer* (2003) 110 Cal.App.4th 1463, 1471-1473.)

13

Having rejected Zendejas's other claims of error, we reject his cumulative prejudice claim.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

SCADUTO, J.*

We concur:

COLLINS, Acting P.J.

CURREY, J.

_____

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.